WINCHELL et al., Appellants,

v.

BURCH et al., Appellees.

[Cite as *Winchell v. Burch* (1996), 116 Ohio App.3d 555.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 95–P–0150.

Decided Aug. 26, 1996.

*Rexford W. Post,* for appellants.

*Mitchell L. Alperin,* for appellees.

---

CHRISTLEY, Judge.

Appellants, H.H. Forsyth and Nancy K. Winchell, and appellees, Donald and Grace Burch, own contiguous condominiums in the Oaks of Aurora Condominiums ("Oaks") in Aurora, Ohio. Each two-unit condominium at the Oaks was con-

structed with each unit having a "limited common area" consisting of a patio and second-floor deck directly overhead.[1]

On April 26, 1991, a condominium plat and drawings, condominium declaration, and association bylaws were filed with the Portage County Recorder by Seneca Partnership, the developer, pursuant to R.C. 5311.06(A). The plat demonstrated the general design and proposed construction of all units, including patios and decks.

The declaration provides that porches and patios are "limited common areas and facilities," reserved for the exclusive use of one or more units, but less than all units.

The declarant of the declaration was to incorporate and organize an association on the date upon which the sale of the first unit was recorded. Seneca Partnership executed the bylaws in order to establish a unit owners' association pursuant to R.C. 5311.01(L). By operation of law, the filing of the bylaws established the association. However, as will be seen, the association did not actually meet or elect officers and become functional until August 18, 1994.

Appellants purchased their unit in May 1991 and their deed was filed in March 1992.

On March 3, 1993, appellees executed a purchase agreement and moved in around May 22, 1993. At the time of purchase, the unit plans showed one deck which was nine square feet. During the purchase negotiations with Stephen M. Krutowsky, one of Seneca's general partners and a director of the Oaks of Aurora Condominium Association, the parties agreed to grade the north side of the unit and change the railroad ties in order to allow a side deck to be built.

In early summer 1993, appellees began to build this large, three-tiered wooden side deck, extending out about fourteen feet. The purchase agreement did not expressly allow such a large, nonconforming deck, and no approval had been obtained for the deck from the yet-to-be organized association. Nevertheless, appellees obtained a letter on August 12, 1993, from Krutowsky to present to the Aurora Architectural Review Board. In the letter, Krutowsky purported[2] to exercise the authority of the association and granted appellees permission to build the deck. The city's architectural review board ultimately approved the plans, as did the city building department.

---

1. Also part of the limited common area is a walkway and driveway; however, these are not at issue in this appeal.

2. The referee found that Krutowsky had no authority to do this, and this finding was adopted by the trial court. It is not an issue in this appeal.

When appellees began to build the addition, appellants filed a complaint for injunctive relief, directly against appellees, on September 2, 1993, seeking to enjoin them from building the deck addition. Neither the Seneca Partnership nor the association was made a party to the complaint. No allegation of nuisance was made in this original complaint. Although appellants were initially granted a temporary restraining order, the court, after a hearing, denied their request for a preliminary injunction. This decision was based on a lack of sufficient evidence to support their motion. The work on the deck was then completed.

On September 13, 1993, appellants filed a motion to amend their complaint, which was granted. This amended complaint realleged the allegations of the original complaint and added a second cause of action in private nuisance.

On October 8, 1993, appellees filed an answer to appellants' complaint, asserting six affirmative defenses.

An evidentiary hearing before a referee was held on April 19, 1994. The referee found that the deck substantially encroached onto *common areas* used by appellants and unreasonably restricted their access to property *owned in common*. In the referee's report and recommendations, filed on June 24, 1994, he found:

"13. Burches' Deck does not comply with the Condominium Documents and encroaches onto *common areas* used by Winchells for walking, ingress and egress around the condominium, and other uses and enjoyment, and substantially and unreasonably restricts Winchells' access to *property owned by them in common with others*, thereby creating a private nuisance." (Emphasis added.)

He recommended granting appellants' prayer for injunction for the removal of the nonconforming structure. However, he withheld implementation of the injunction pending a determination by the condominium association as to whether appellees could maintain the structure in the manner which it was built. No objections to the report were filed.

On August 12, 1994, the court adopted the report, finding that the nonconforming addition constituted a private nuisance and granting appellants an injunction.

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Winchells be and hereby are granted judgment against Burches on their claim for injunctive relief for removal of the deck on the based [*sic*] upon R.C. 5311.23 and private nuisance for *constructing and maintaining the deck on common areas.*" (Emphasis added.)

He also granted appellees sixty days to petition the condominium association for approval of the existing annex or a similar one.

On August 18, 1994, the board of directors of the Oaks was finally formed at an organizational meeting, pursuant to Section 4.11 of the bylaws. The officers of the board were selected and the architectural review board for the association was formed.[3] As a result of that meeting, the board sent out notices to all unit owners asking them to submit requests for approval of any existing external enhancements to their property.

On August 30, 1994, appellants filed a notice of appeal to this court.

On September 6, 1994, the architectural review board recommended to the board that "no further enhancements or additions shall be done to any unit without prior consent of the Board of Directors of the Oaks of Aurora Condominium Association." At that meeting, specifications were made with regard to appellees' deck.

On September 13, 1994, the board met and, based on the architectural review board's recommendations, voted to allow appellees' deck, with certain conditions.[4] The board members did not call for a vote of all of the unit owners.

On September 16, 1994, the board of the association notified appellees that their request for the addition had been approved, subject to the conditions imposed by the architectural review board.

On July 17, 1995, after oral argument, this court determined that the August 12, 1994 judgment entry was not a final appealable order and dismissed the appeal. See *Winchell v. Burch* (July 17, 1995), Portage App. No. 94–P–0094, unreported, 1995 WL 453426. Our decision was based on the fact that the lower court's judgment was conditional upon the condominium association's decision.

On July 24, 1995, appellants filed a motion to modify judgment entry and on July 27, 1995, appellees filed a motion to correct judgment entry to conform to evidence. The gist of both motions was that the trial court's judgment entry needed to reflect that authorization had now been given by the association to appellees to maintain their deck. In fact, appellants filed a stipulation on August 1, 1995, that "the defendants did in fact obtain authorization from the homeowners association to maintain their deck." An evidentiary hearing was held on November 13, 1995. At that time, the trial court found that the board of the association had authorized appellees to keep their deck as built and that it had modified and refiled its plans with the recorder accordingly. As a result, because it now conformed to the condominium documents and plans, the trial court

---

3. Grace Burch was selected as president of the board; however, after her selection, she abstained from voting on any issues which concerned her deck.

4. Apparently, all modifications for all existing units were approved. However, the Winchells are only objecting to the Burches' improvements.

vacated its previous holding that the deck constituted a private nuisance. It then rescinded the injunction.

Appellants filed this appeal on November 30, 1995, asserting the following two assignments of error:

"1. Having found a private nuisance to exist and issuing an injunction, it was error for the trial court to delegate the decision of whether to abate the nuisance to a third-party, non-profit corporation.

"2. The trial court erred to the prejudice of plaintiffs in permitting a board of directors of a condominium association to authorize a conversion of common area land for private use without the unanimous consent of all of the unit owners."

While appellants' first assignment of error is allegedly based on the court's November 17, 1995 entry, their argument is actually focused on the August 12, 1994 interlocutory entry. In that August 12, 1994 entry, the trial court held that a private nuisance existed, but gave appellees sixty days to seek the association's approval of their nonconforming deck. That judgment entry was clearly conditional and thus interlocutory. *Grabill v. Worthington Industries, Inc.* (1993), 89 Ohio App.3d 485, 624 N.E.2d 1105. While there was no direct appeal available of that order, we can still consider its impact on the November 17, 1995 judgment entry.

Appellants' primary argument is that the trial court made certain factual findings in the August 12 entry that it later disregarded in its November 17 entry without having any subsequent evidential basis. Specifically, appellants claim that the court made a finding that a private nuisance existed and then vacated that finding without having any new facts upon which to base its vacation.

A close scrutiny of the two judgment entries, as well as the referee's report upon which the August 12 entry was based, reveals that appellants' interpretation of those entries is faulty.

The referee found in number 21 of his findings of fact:

"The evidence showed that Burches' enlarged Deck substantially encroached onto *common* areas used by Winchells for walking and other activities and enjoyment, and substantially and unreasonably restricted Winchells' access to property owned by [them] in *common* with others." (Emphasis added.)

In his conclusions of law, number 13, the referee found:

"Burches' Deck does not comply with the Condominium Documents and encroaches onto *common* areas used by Winchells for walking, ingress and egress around the condominium, and other uses and enjoyment, and substantially and unreasonably restricts Winchells' access to property owned by them *in common with others*, thereby creating a private nuisance." (Emphasis added.)

The trial court in adopting those findings of fact and conclusions stated:

"IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Winchells be and hereby are granted judgment against Burches on their claim for injunctive relief for removal of the deck on the based [*sic*] upon R.C. 5311.23 [5] and private nuisance for constructing and maintaining the deck *on common areas.*" (Emphasis added.)

It is apparent from all of the above entries that the finding of private nuisance is contingent on the appellants' right to the use of the *common areas* as defined by the referee and the trial court.[6] A careful reading leads us to the conclusion that if the encroachment had not been on, what the referee defined at that time as *common areas,* there would have been no private nuisance.[7] It is apparent that the trial court, as well as the referee, felt that if the association approved the changes, appellants' could no longer claim a right to the use of those disputed *common areas* as they would no longer be common areas. Appellants' cause of action would essentially become moot.

 Without considering the question raised in the next assignment as to whether the action of the association was lawful, it is apparent to us that the trial court did not abuse its discretion in referring the matter back to the association for possible resolution. We conclude that this was essentially a contractual dispute with some statutory parameters. By seeking an injunction, appellants sought relief in equity. In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy. And, if the condominium documents and statutes did not preclude the actions of the trial court, the court committed no abuse of discretion in directing the parties to refer the matter back to the association. The first assignment is without merit.

 That leads us then to the second assignment as to whether the association's board had the power and authority to approve the deck and redraw the site plans accordingly.

The second hearing before Judge Martin was precipitated by two motions filed in quick succession. The first motion was filed by appellants, a motion to modify

---

5. R.C. 5311.23 creates a civil cause of action directly against another unit owner for failure to comply with any lawful provision of the condominium instruments.

6. There was no objection by either party to the factual finding by the referee that the encroachment was on *common area.*

7. The second allegation of private nuisance concerned the Burches' *use* of the deck and porch. The disputed usage concerned loud voices, sawing late at night, and parties. The referee specifically found no nuisance in this regard.

judgment entry. The second was filed by appellees and was designated a motion to correct judgment entry to conform to evidence.

The November 17, 1995 judgment entry filed by the court and appealed to this court specifically clarified and indicated that the preceding judgment of August 12, 1994, the subject of the two motions, had been based on the proposition that the earlier finding of a private nuisance had been created by the nonconformance of appellees' deck with the original site plans. The court went on to indicate that the evidence showed that appellees' deck now conformed to the association's condominium documents and the nuisance was thus abated:

"Having obtained such authority, Defendants' deck now conforms to the requirements of the condominium documents and does not *now* either violate the condominium documents or constitute a private nuisance."

The trial court afforded appellees an opportunity to obtain approval of the new plans from the condominium association. Appellees responded with an approval from the association, but clearly not from *all* unit owners. Appellants now argue that the failure to obtain unanimous consent makes the action by the association void pursuant to R.C. 5311.04(D).

R.C. 5311.04(D) provides that "the *percentage* of interest in common areas * * * shall not be altered except by an amendment * * * approved by all unit owners affected." As this court stated in *Claridges of Walden Condominium Assn. v. Wenk* (Aug. 16, 1991), Portage App. No. 89–P–2110, unreported, 1991 WL 157624:

"In this case, appellees' actions simply had no effect upon the *percentage* of interest each owner had in the common areas. While their actions changed the appearance of one part of the common area in which each owner had an interest, it did not diminish the amount of that interest in relation to the other unit owners." (Emphasis *sic.*) *Id.* at 7–8.

Further, as this court stated in *O'Neil v. Atwell* (1991), 73 Ohio App.3d 631, 598 N.E.2d 110:

"The addition of Atwell's deck did not affect the percentage of interest of each unit owner. They still owned the same percentage of common area as they did prior to the construction. The only change was in the appearance of a portion of the limited common area. Hence, R.C. 5311.04(D) does not apply to the case *sub judice.*" (Emphasis *sic.*) *Id.* at 638, 598 N.E.2d at 114. See, also *Big Turtle Condominium Unit Owners' Assn. v. Burke* (July 27, 1990), Lake App. No. 89–L–14–039, unreported, 1990 WL 107461.

Thus, appellees were not required to obtain unanimous approval from all unit owners affected before their deck was approved. As was the case in the above-

referenced cases, the *percentage* of ownership of the common areas has been unaffected by the construction of appellees' deck.

For these reasons, the second assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY, J., concurs.

FORD, P.J., concurs separately.

FORD, Presiding Judge.

While I am constrained to concur in the opinion and judgment in this case because of this court's adherence to precedent on the issue of unanimous consent pursuant to R.C. 5311.04(D), this writer cannot applaud the manner in which this particular construction proceeded and the ratification method which obtained after the fact.

While the trial court ultimately determined that the private nuisance was abated by the action of obtaining permission from the association, given the facts presented in this case regarding the mechanics of the construction schedule, the physical character of the addition, and the manner that was employed by appellees in obtaining consent, this writer may well have been persuaded to hold against appellees on the issue of nuisance and order that this deck, which was constructed in disregard of their neighbors, be removed. However, the applicable standard of review inhibits that exercise.

The issue of intrusion into initially designated common areas and condominium plats would be a worthy subject for reexamination by the General Assembly.