McCARTHY et al., Appellants,

v.

LIPPITT et al., Appellees.

[Cite as *McCarthy v. Lippitt,* 150 Ohio App.3d 367, 2002-Ohio-6435.]

Court of Appeals of Ohio,
Seventh District, Monroe County.

No. 861.

Decided Nov. 19, 2002.

Richard A. Yoss, for appellants.

James R. Addison, for appellees.

———————

WAITE, Judge.

{¶ 1} This appeal arises out of a partition action filed by Mr. and Mrs. Bruce and Kathleen McCarthy ("appellants") in the Monroe County Court of Common Pleas. The partition action involved a 55–acre parcel of real estate in Monroe County. The trial court found that appellants had a one-half undivided interest in the property and ordered the property to be sold. The trial court awarded appellants $10,000 of any proceeds, but then ruled that all excess proceeds would go to the owners of the other one-half interest, Mr. and Mrs. Lippitt ("appellees"). Appellants argue that they, as one-half owners, should have been awarded one-half of any excess proceeds. It appears that the trial court's distribution order effectively divested appellants of their one-half interest in the property, and the case must be reversed and remanded for a redetermination of the distribution of the proceeds.

{¶ 2} The record shows that in 1995, Laverne and Darlene Winland owned a 55.641–acre parcel of real property in Rinard Mills, Ohio (hereinafter "the property"). On June 29, 1995, the Winlands sold the property to appellees (as trustees of the "L.L. Trust") and to a third party, Darrell Gamiere ("Gamiere"),

giving each a one-half interest. A deed memorializing the sale was recorded in Monroe County, Ohio, on June 29, 1995.

{¶ 3} On July 17, 2000, Gamiere and appellants entered into a purchase agreement which would transfer to appellants a two-story building, a lean-to building, and an area of land between the two structures.

{¶ 4} On August 29, 2000, Gamiere transferred to appellants, by quitclaim deed, his interest in the property. The deed did not state that Gamiere was transferring an undivided one-half interest. Instead, it purported to transfer the entire 55.641 acres. (8/8/01 J.E., attachment.) Conveyance records indicate that appellants paid $10,000 for the property.

{¶ 5} On December 15, 2000, appellees, as trustees of the L.L. Trust, transferred by quitclaim deed their interest in the property to themselves individually.

{¶ 6} On March 8, 2001, appellants filed a pro se complaint seeking declaratory relief in the Monroe County Court of Common Pleas. On June 1, 2001, appellants sought an injunction to prevent any modifications to the property during the litigation. The motion was granted on June 5, 2001.

{¶ 7} On June 13, 2001, appellants filed an amended pro se complaint requesting a partition of the property. The complaint alleged that appellants were owners of an undivided one-half interest in the real estate but that the buildings on the property had been previously partitioned, by oral agreement, among the parties. Appellants claimed sole ownership of two barns and a two-story apartment building. Appellants alleged that appellees were the sole owners of a mobile home and a third barn. Appellants also alleged that the parties had agreed orally to lease the various structures to each other. Appellants ultimately requested that the property be sold and that the parties be paid according to their interests in the property. (6/13/01 Amended Complaint, 4.)

{¶ 8} On June 27, 2001, appellees filed a pro se answer and counterclaim. Appellees argued that, as cotenants, they were entitled to equal access to all buildings on the property. Appellees argued that there were no oral agreements to allocate the buildings to the various parties, and that there were no oral leases on the property. Appellees requested that the property be sold to pay off the interests of each party and that they be reimbursed for improvements which they made on the property.

{¶ 9} At no point was Gamiere made a party to these proceedings.

{¶ 10} The case was heard at a bench trial on August 1, 2001. The parties appeared at trial pro se. There was extensive testimony taken about improvements made on the property, an oral agreement to divide the ownership of the buildings, oral leases on the buildings, and about the failure to record any of

these transactions in writing. Gamiere testified that he invested $80,000 into the property but also stated that all written records of those improvements were lost in a flood. Gamiere testified that he did not know whether he received permission from the other cotenants to make repairs. Gamiere testified that he approved of the repairs and improvements Appellees made to the property.

{¶ 11} Mr. Lippitt testified that he contributed approximately $166,000 worth of plumbing labor and materials to the property. He also testified that the property was appraised at $48,000. Mr. Lippitt had no explanation for the great discrepancy between the low appraisal price and the supposed value of all the improvements made to the property.

{¶ 12} Mr. McCarthy testified that he paid an additional $5,000 to Gamiere for his one-half interest, which was not reflected in the records, bringing his total cost for the property to $15,000.

{¶ 13} The trial court filed its judgment entry on August 8, 2001. The trial court found that appellants owned a one-half undivided interest in the property and that appellees owned the other one-half undivided interest. The court found that physical partition was not possible without manifest injury to the value of the property. The court named three commissioners to evaluate and appraise the property. The court gave each party ten days to elect to take the property at the appraised value. The court ordered the proceeds to be divided as follows:

{¶ 14} "1. All unpaid real estate taxes, mortgage principal and interest.

{¶ 15} "2. The [appellants] shall receive the first $10,000 from the sale proceeds after payment of all legal obligations set forth above.

{¶ 16} "3. The [appellees] shall receive the remainder of the proceeds from sale." (8/8/01 J.E., 3.)

{¶ 17} On August 9, 2001, the three commissioners appraised the property at $75,000.

{¶ 18} Appellants filed this appeal on August 14, 2001. Appellants filed with the trial court a motion to stay proceedings, which was denied.

{¶ 19} Both parties elected to take the property at the appraised value. On October 17, 2001, the trial court ordered that the property be sold at public auction due to the fact that both parties had elected to take the property at the appraised value.

{¶ 20} On November 2, 2001, appellants filed with this court a motion for stay of execution, which was granted on November 13, 2001.

{¶ 21} This court has held that an order of partition is a final, appealable order. *Traicoff v. Christman* (May 13, 1982), Monroe App. No. 549, 1982 WL

6131; see, also, *Mitchell v. Crain* (1958), 108 Ohio App. 143, 149, 9 O.O.2d 189, 161 N.E.2d 80.

{¶ 22} "Although the right to partition is controlled by statute, it has long been held to be essentially equitable in nature." *Bryan v. Looker* (1994), 94 Ohio App.3d 228, 231, 640 N.E.2d 590, citing *Russell v. Russell* (1940), 137 Ohio St. 153, 157, 17 O.O. 506, 28 N.E.2d 551. "[W]here the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually." *In re Estate of Cogan* (1997), 123 Ohio App.3d 186, 188, 703 N.E.2d 858. The standard of review applicable to claims for equitable relief is abuse of discretion. *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 274–275, 15 OBR 408, 473 N.E.2d 798. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the court has acted either unreasonably, unconscionably, or arbitrarily. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597.

{¶ 23} Appellants' first assignment of error asserts:

{¶ 24} "The court erred in not following the requirements set forth in Ohio Revised Code Chapter 5307 relative to practice and procedures to be followed in partition actions."

{¶ 25} Appellants argue that, in partition actions, the court is required by statute to appoint up to three commissioners to evaluate the property. R.C. 5307.04. Appellant argues that the commissioners have the following statutory duty to determine whether the property can be physically partitioned:

{¶ 26} "In making a partition, *the commissioner or commissioners shall view and examine the estate and,* on their oaths and having due regard to the improvements, situation, and quality of the different parts, *set it apart in lots that will be most advantageous and equitable.*" (Emphasis added.) R.C. 5307.06.

{¶ 27} Appellants argue that the commissioners are not required to appraise the property unless they first decide that it cannot be physically partitioned:

{¶ 28} "*When the commissioner or commissioners are of opinion that the estate cannot be divided* according to the demand of the writ of partition without manifest injury to its value, the commissioner or commissioners *shall return that fact to the court of common pleas with a just valuation of the estate.* If the court approves the return and if one or more of the parties elects to take the estate at the appraised value, it shall be adjudged to them, upon their paying to the other

parties their proportion of its appraised value, according to their respective rights, or securing it as provided in section 5307.10 of the Revised Code." (Emphasis added.)  R.C. 5307.09.

{¶ 29}  Appellants contend that the trial court bypassed these statutes by simply ordering the commissioners to make an appraisal of the property.  The August 8, 2001 judgment entry stated: "IT IS FURTHER ORDERED * * * that the commissioners shall make an evaluation and appraisal of the entire interest which is a subject of this action * * *."  Appellants contend that the order to make an appraisal prevented the commissioners from recommending a physical partition of the property.  Appellants argue that the trial court usurped the role of the commissioners by ordering an appraisal and that the case should be remanded for a proper and full evaluation of the property by the commissioners.

{¶ 30}  Appellees contend that the commissioners perform a mere ministerial duty and that it is ultimately the function of the court of common pleas to partition the property or order that it be sold at public auction.  Appellees argue that the trial court's order indicated that it was not going to approve a physical partition, and, therefore, for the sake of efficiency, required the commissioners to come back with a monetary appraisal.  Appellees maintain that the trial court had the authority to do this because, in the end, it was the trial court that was required to make the partition decision.

{¶ 31}  Appellees also argue that appellants have waived this error because their complaint specifically requested a partition sale of the property rather than physical partition.

{¶ 32}  Appellees' arguments are both correct.  First, it was ultimately the decision of the trial court to order physical partition or a judicial sale of the property, regardless of the opinion of the commissioners.  R.C. 5307.05 states that "the sheriff shall cause to be set off and divided to the plaintiff or each interested party, whatever part and proportion of the estate *as the court of common pleas orders.*"  (Emphasis added.)  The commissioners' powers to evaluate the property and recommend physical partition always remain subject to the ultimate approval of the court of common pleas:

{¶ 33}  "The partition power of commissioners has been characterized as 'quasi-judicial.'  *Forest Park Properties, Inc. v. Pine* (1966), 9 Ohio App.2d 348, 355, 38 O.O.2d 427, 431, 224 N.E.2d 763, 768.  Commissioners have 'very large powers' in making partition.  *Terrell v. Leonard* (1910), 17 C.C. (N.S.) 89, 92 [1910 WL 708].  However * * * commissioners' powers are ultimately subject to court authority;  commissioner partition reports may be rejected, modified, or approved by the trial court.  An order partitioning property extinguishes a

tenant's rights in the whole property, and establishes the tenant's exclusive right of ownership in the part of the property set off to him. Since it is an order creating and extinguishing rights in specific property, it is an exercise of the judicial power, and cannot be entirely delegated to a nonjudicial officer. A judge must remain ultimately responsible for the exercise of the power of partition." (Footnotes omitted.) *McGill v. Roush* (1993), 87 Ohio App.3d 66, 76, 621 N.E.2d 865; see, also, *Forest Park Properties, Inc. v. Pine* (1966), 9 Ohio App.2d 348, 356, 38 O.O.2d 427, 224 N.E.2d 763 (partition commissioners role is pre-judicial and advisory only).

{¶ 34} To rephrase appellants' argument, the trial court's error was that it failed to include the words "if necessary" after it ordered the commissioners to "make an evaluation and appraisal." Appellants assume that the commissioners would have interpreted the trial court's order of "make an evaluation and appraisal" as a limitation on their ability to order a physical partition. It is not particularly reasonable to conclude that the commissioners would have considered the phrase "make an evaluation and appraisal" as a limitation on their duties. Nevertheless, assuming arguendo that appellants' interpretation of this phrase is correct, the trial court did not commit any error in making such an order, given the facts of this case.

{¶ 35} First, the trial court had a wealth of information about the property at its disposal, based on the extensive partition hearing. The trial court had information about the location, size, attributes, and relative values of each building on the property. The record also contains various photographs of the property. Based on this evidence, it is entirely possible that the trial court was in a better position to evaluate the property than the commissioners were. Even if the commissioners would have recommended physical partition, the trial court could have rejected the recommendation, sent out a new writ of partition, and ordered the commissioners to return a monetary appraisal. The result would have been the same, albeit using a more cumbersome process to achieve it. It does not seem unreasonable for the trial court to streamline the partition process by requiring the commissioners to determine an appraisal amount as they were evaluating the property.

{¶ 36} Furthermore, there is no indication in the record that the commissioners ever saw the August 8, 2001 judgment entry. The commissioners were made aware of their duties when they were served with the August 9, 2001 writ of partition. The writ of partition correctly stated the statutory duties of the commissioners and did not limit them to making only a monetary appraisal. The writ of partition ordered the commissioners to set off and divide the property to the parties according to their interests, and further ordered:

{¶ 37} "[I]f the said Commissioners are of opinion that said premises cannot be divided according to the demand of this writ without manifest injury to its value, you cause them to make a just valuation of the same in money." (8/9/01 Writ of Partition.)

{¶ 38} The commissioners filled in the section of the writ of partition that stated: "We are of the opinion that the said estate cannot be divided according to the demand of the writ without manifest injury to its value, and we do estimate the just value of the same at Seventy-five thousand and 00/100 ($75,000.00) Dollars." It appears from the record that the commissioners were given a full and complete statement of their duties and that they decided the property could not be physically partitioned.

{¶ 39} Finally, under the invited-error doctrine, "a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. Beaver v. Konteh* (1998), 83 Ohio St.3d 519, 521, 700 N.E.2d 1256. "Invited error is a branch of the waiver doctrine that estops a party from seeking to profit from an error that the party invited or induced." *Koch v. Rist* (2000), 89 Ohio St.3d 250, 256, 730 N.E.2d 963. If a party's complaint directs the court to grant a specific and limited type of relief, it is invited error if the court fails to consider whether to grant other kinds of relief. See *State ex rel. Mason v. Griffin* (2000), 90 Ohio St.3d 299, 303, 737 N.E.2d 958. Because appellants requested only a judicial sale of the property in their partition complaint, they waived any error relating to the trial court's failure to consider other types of relief, such as physical partition.

{¶ 40} For all the foregoing reasons, appellants' first assignment of error is overruled.

{¶ 41} Appellant's second assignment of error states:

{¶ 42} "The court erred in finding that the investment of Darrell Gamiere had not been substantiated."

{¶ 43} Appellants contend that the record contains unrebutted evidence that Gamiere spent $109,000 on the property while he was a cotenant, which includes $28,000 that went to the initial purchase price. Appellants support their argument by citing trial Exhibit 8, which is simply a list of supposed expenditures by Gamiere. Appellants argue that there was no objection by appellees to anything on Exhibit 8, and that, therefore, the court should have accepted as established fact that Gamiere contributed $109,000 to the property. Appellants argue that they should have been credited with those improvements made by Gamiere. Appellants make a number of other references to expenditures by appellees that do not appear to have any relevance to this assignment of error.

{¶ 44}   Appellees argue that Gamiere's expenditures are irrelevant to this litigation because he is no longer a cotenant and is not a party to this partition action.   Appellees assert that any contributions Gamiere made to the property belong to all current cotenants equally.

{¶ 45}   Appellees also contend that the weight to be given to any particular item of evidence is for the trier of fact to decide, and that the trial court simply refused to accept as fact that Gamiere spent $109,000 on the property.   Appellees point out that Gamiere sold his entire interest in the property to appellants for $10,000.   Appellees assert that this sale price is a good indication of what Gamiere thought his share of the property was worth.   Based on the record before us, we must agree with appellees and determine that appellants' arguments are not persuasive.

{¶ 46}   Appellants have not given this court any legal reason for attributing the alleged contributions of Gamiere, the prior owner of appellants' fractional interest, solely to appellants.   There is very little case law on this subject.   The only published case in Ohio somewhat dealing with this problem is *Russell v. Russell* (1939), 137 Ohio St. 153, 17 O.O. 506, 28 N.E.2d 551.   In *Russell,* cotenant Clara Russell owned a one-half undivided interest in a parcel of real property.   She brought a partition action against the other cotenants.   Clara received her interest by quitclaim deed from William Russell.   As part of the partition action, Clara also attempted to be reimbursed, either through an accounting or through an equitable lien, for improvements made on the property by William Russell while he was a cotenant.

{¶ 47}   The court reasoned that the claim for improvements was an equitable interest in the land and that the equitable interest itself that could be conveyed.   Id. at 157, 17 O.O. 506, 28 N.E.2d 551.   The court held that a quitclaim deed that specifically transferred all of the grantor's equitable interest in the property would also transfer the grantor's right of contribution for improvements.   Id.

{¶ 48}   There is no indication that Gamiere transferred his equitable claim for improvements to appellants.   The quitclaim deed stated only that "real property" was transferred to appellants.   The low sale price of $10,000 would tend to indicate that he did not intend to transfer any additional equitable interests.   Therefore, it was within the trial court's discretion to treat appellants as if they had no interest in Gamiere's potential claim for contribution arising from improvements Gamiere made to the property.   Because Gamiere was not a party to the partition action, there was no reason for the trial court to consider any equitable claims he might have had in his own right.

{¶ 49}   Even assuming, arguendo, that appellants were able to assert Gamiere's claim for improvements as their own, the record does not support

that Gamiere was entitled to any reimbursement. The general rule is that improvements made by one cotenant without the consent of all other cotenants enure to the benefit of all cotenants, who cannot later be forced to contribute a part of the cost of those improvements. 2 Tiffany, Real Property (3d Ed.1939, Supp.2001), Section 462. "To create a claim against the land for improvements there must be express agreement by the cotenants or some inequitable action that will justify the chancery courts in creating an equitable lien." 10A Thompson on Real Property (1957), Section 5295. Gamiere himself could not say that he received appellees' consent to make improvements and repairs on the property. If the trial court concluded that appellees did not consent to the expenditures, then there was no reason to provide for reimbursement of those expenditures.

{¶ 50} A trial court, during partition proceedings, has the equitable power to reimburse a cotenant for improvements even if those improvements were not made with the consent of the other cotenants. The trial court may permit this adjustment to avoid the unjust enrichment of the other cotenants. *Sword v. Sword* (1993), 86 Ohio App.3d 161, 165, 620 N.E.2d 199; *Edwards v. Edwards* (1958), 107 Ohio App. 169, 173–174, 8 O.O.2d 73, 157 N.E.2d 454. The right to an accounting for improvements is secondary to and dependent on the right to partition. *Edwards* at 173, 8 O.O.2d 73, 157 N.E.2d 454; *Alpers v. Alpers* (Dec. 17, 1993), 11th Dist. No. 93–G–1771, 1993 WL 548491. "The rule in partition depends entirely on equitable principles and is limited to the enhanced value of the improvement * * * if the party making the improvement did so in good faith and only for the enhanced value of the property due to the improvement." 10A Thompson on Real Property (1957), Section 5295.

{¶ 51} The record is devoid of any evidence that Gamiere's improvements enhanced the value of the property. In fact, the trial court found it disconcerting that the parties had collectively attempted to demonstrate over $300,000 worth of improvements on property recently appraised at only $48,000. The trial court would certainly have remained within its discretionary powers to conclude that Gamiere's alleged improvements did not enhance the value of the property.

{¶ 52} Finally, the fact that appellees did not specifically challenge Gamiere as to each expenditure does not mean that the trier of fact was required to accept the expenditures as fact. Gamiere's expenditures were not presented by way of admissions pursuant to Civ.R. 36. If they had been, the expenditures would have been treated as "conclusively established," pursuant to Civ.R. 36(B). Apart from Civ.R. 36 admissions, evidence in a civil case may be believed or disbelieved, in whole or in part, by the trier of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The trial court may have simply disbelieved that Gamiere invested $109,000 in the property

because there were no records to support expenditures of that amount. For all these reasons, appellants' second assignment of is overruled.

{¶ 53} Appellants' third assignment of error argues:

{¶ 54} "The distribution of proceeds as ordered by the court was contrary to law and against the manifest weight of the evidence."

{¶ 55} Appellants argue that, if the judicial sale takes place as ordered, they should receive a proportionate share of any excess proceeds rather than merely a lump-sum payment of $10,000. Appellants assert that it is inequitable that appellees were awarded all excess proceeds of a judicial sale after payment of taxes, mortgages, expenses, and the $10,000 awarded to appellants. Appellants point to R.C. 5307.14, which states:

{¶ 56} "*The money* or securities *arising from a sale of,* or an election to take *an estate, shall be distributed* and paid, by order of the court of common pleas, *to the parties entitled thereto, in lieu of their respective* parts and *proportions of the estate,* according to their rights therein." (Emphasis added.)

{¶ 57} Appellants contend that the trial court decided to return their purchase price to them rather than award them their rights as one-half owners. Appellants submit that there is nothing in the record supporting this outcome, particularly when the trial court itself declared in its judgment entry that appellants had a one-half undivided interest in the property.

{¶ 58} Appellants assert that the trial court, for all practical purposes, awarded the entire property to appellees. Appellants argue that appellees could outbid any bidder, including appellants, without fear of the consequences because appellees themselves would receive all excess proceeds. In other words, appellees would simply have to pay themselves if they were the highest bidders, which means that they would not need to pay anything more than the expenses listed in the August 8, 2001 judgment entry. Appellants argue that, as one-half owners of the property, they should also receive one-half of any excess proceeds, i.e., the proceeds remaining after payment of all outstanding debts and liens on the property. Appellants maintain that this proportional distribution of excess proceeds would ensure that each cotenant would receive their proper fractional interest in the property and would enable them to fairly bid on the property at a judicial auction.

{¶ 59} Appellees argue that partition proceedings are equitable in nature, citing *Wagner v. Armstrong* (1916), 93 Ohio St. 443, 113 N.E. 397, syllabus. Appellees argue that equitable proceedings are reviewed for abuse of the trial court's discretion. Appellees assert that no statutory law or case law requires that proceeds of a partition sale be divided proportionally. Appellees do not

address the fact that proportional distribution is required by R.C. 5307.14 in those cases where proportional rights are involved.

{¶ 60} Appellees contend that appellants made no improvements to the property, that they should not receive the benefit of Gamiere's improvements, and that the trial court properly awarded appellants their only possible interest in the property, which was their initial investment. Appellees offer no authority to support these assertions.

{¶ 61} Appellants' arguments are correct. As stated previously, the right to a partition, although governed by statute, is essentially an equitable action. *Russell,* supra, 137 Ohio St. at 157, 17 O.O. 506, 28 N.E.2d 551. "In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy." *Winchell v. Burch* (1996), 116 Ohio App.3d 555, 561, 688 N.E.2d 1053. Equitable discretion may be limited by statute. See, e.g., *Getter v. Getter* (1993), 90 Ohio App.3d 1, 8, 627 N.E.2d 1043.

{¶ 62} The trial court found that appellants owned an undivided one-half interest in the property. (8/8/01 J.E., 4.) The trial court also found that appellants paid $10,000 for their interest in the property. (8/9/01 J.E., 4.) The court's finding regarding appellants' original purchase price, though, does not affect appellants' proportional interest in the property. Appellants received their one-half interest from Gamiere. There was no dispute at trial that Gamiere received a one-half interest in the property. Once a proportional or fractional interest in property is established, that proportion does not change merely because other cotenants may have paid more for their interests or may have invested more in improvements on the entire property. See *Huls v. Huls* (1954), 98 Ohio App. 509, 512, 58 O.O. 46, 130 N.E.2d 412.

{¶ 63} It is clear from R.C. 5307.14 that proceeds from a partition sale should be distributed proportionately where there are proportional interests at stake. "The money * * * arising from a [partition] sale * * * shall be distributed * * * to the parties entitled thereto, in lieu of their respective parts and *proportions* of the estate * * *." (Emphasis added.) R.C. 5307.14. A one-half interest is, by definition, a proportional interest. Although a trial court could attempt to estimate the value of that proportional interest by means of accurate appraisals, it is the final sale price that ultimately determines the value of a proportional interest. "The proceeds from a [partition] sale are treated as if they were still land and should be divided according to the respective interests of the parties in the land, * * *." 4 Thompson on Real Property (1979), Section 1829. After deducting all expenses, liens, and equitable adjustments, the cotenants continue to own any remaining funds in the same proportion that they owned the real property. Of course, the trial court may order equitable adjustments to this

division, but the cotenants continue to own their respective proportional interests after allowing for those adjustments. In this case, the trial court's distribution arrangement, for all intents and purposes, divested appellants of their proportional share of the excess proceeds.

{¶ 64} Gamiere received his one-half interest in 1995. Once it is conceded that Gamiere had a one-half interest, it does not matter how much Gamiere's successor in interest paid for the property interest. It remains as a one-half interest. For example, if Gamiere had devised the property to a close relative, the relative would have paid nothing for the property but would just as certainly retain a one-half interest in the property. The trial court was required to respect that proportional interest in the partition proceedings.

{¶ 65} The trial court's judgment entry cannot be cured by merely modifying the part of the order granting appellees "the remainder of the proceeds from the sale." (8/8/01 J.E., 4.) The trial court may have factored unspecified equitable adjustments into the judgment. Any equitable adjustments need to be specified in the order. On remand, the trial court should quantify equitable adjustments, if there are any, and include them in its order of distribution.

{¶ 66} In conclusion, appellants' first two assignments of error are overruled. The trial court did not usurp the role of the partition commissioners and the evidence does not support that appellants should be credited with improvements made by Gamiere. Appellants' third assignment of error is sustained because the trial court did not preserve the parties' proportional interests in the property. The August 8, 2001 judgment entry is hereby reversed, and this case is remanded for a redetermination of the amounts of any equitable adjustments and for a division of any excess proceeds according to the parties' proportional interests in the property.

Judgment reversed in part,
affirmed in part
and cause remanded.

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.