JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
After a jury trial, defendant-appellant George Whinghter[1] appeals from the judgment of the Hamilton County Court of Common Pleas ordering him and Janet Ashcraft each to pay fifty percent of $63,384, including 10% interest from the date of the judgment and costs associated with the case. Additionally, the trial court noted that as "[t]he award is within the policy limits of the Defendants Ashcraft and Whinghter, all claims under the UM/UIM policies of defendants Westfield Insurance Company and State Farm Insurance Company are now moot." The trial court also included appropriate Civ.R. 54(B) language. The plaintiffs-appellees, the Fulton family, have also filed an appeal from the same judgment.
The litigation commenced on July 13, 2000, when the Fultons filed a complaint for declaratory judgment against Westfield Insurance Company ("Westfield") seeking UM/UIM benefits because of two separate auto accidents allegedly caused by the negligence of the other drivers. On July 14, 1998, the Fulton auto, while in an intersection on Harrison Avenue in Cincinnati, was hit by Janet Ashcraft, who was driving her husband Dennis Ashcraft's auto. In the second accident on September 3, 1998, Michael J. Fulton was a passenger in an auto driven by Brian V. Chambers II, when an auto driven by George Whinghter ran into them. Chambers had been waiting to make a left turn. Prior to trial, on March 8, 2001, an entry was journalized dismissing all of the Fultons' claims against Chambers and the cross-claims against him as well. In addition, on May 14, 2001, a suggestion of death was filed by counsel for George Whinghter. On February 7, 2003, the record indicates that the case was reassigned to another judge, who ultimately presided over the jury trial.
The jury trial commenced on September 2, 2003, and continued through September 5, 2003. During the trial, on September 4, 2003, Whinghter's counsel moved for a directed verdict because no substitution of parties had occurred after Whinghter's death. In response, Fultons filed a motion to dismiss without prejudice pursuant to Civ.R. 41(A)(2). Argument was heard by the trial court on both motions on September 4. On September 5, 2003, the jury found in favor of the Fultons.
The record transmitted to this court includes only two transcripts, one a 16-page volume and another a 13-page volume addressing the motions at issue and arguments made in the midst of trial, outside the presence of the jury on September 4, 2003. As we have already noted, the trial judge presiding over the jury trial was not the original trial judge. The two transcripts transmitted to this court show that the parties repeatedly referred to discussions that had occurred with the previous judge and agreements that had alleged been reached, although there was disagreement among the parties over what the oral agreements really entailed.
App.R. 9, 10(A), and 16(A)(3) impose a duty on all appellants to provide a complete record for our review prior to the submission of a case for decision. When portions of the record necessary for resolution of assigned errors are omitted from the record, this court has no choice but to presume the validity of the lower court's proceedings, and affirm.[2] When the appellants allege an abuse of discretion, they must demonstrate more than an error of law or judgment; they must show that the trial court's attitude was unreasonable, arbitrary, or unconscionable.[3]
Whinghter raises three assignments of error: (1) that the trial court erred as a matter of law by failing to direct a verdict in favor of Whinghter after Whinghter's death was suggested on the record and the Fultons failed to file a motion to substitute the proper party; (2) that the trial court erred and abused its discretion in rendering a verdict in favor of the Fultons when it lacked personal jurisdiction over Whinghter and (3) that the trial court erred by failing to dismiss the case against Whinghter because the Fultons had failed to file a motion to substitute the proper party. Since we deem the assignments of error interrelated because of the common contention concerning the failure to join the proper party after a suggestion of Whinghter's death had been filed, we address them together.
Two types of jurisdiction exist, jurisdiction over the person and jurisdiction over the subject-matter; only the former is waivable.[4] A court obtains personal jurisdiction over individuals by service of process or by an individual's voluntary appearance or actions.[5] Where one has a claim against an estate, it is incumbent upon him, if no administrator has been appointed, to procure the appointment of an administrator against whom he can proceed.[6] Under the invited-error doctrine, "a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make."[7]
Invited error is a branch of the waiver doctrine that estops a party from seeking to profit from an error that the party invited or induced.[8]
Counsel for Whinghter and for the Fultons are Mr. Uhl and Mr. Helbling, respectively. In the case sub judice, without question service of process was completed prior to the death of Whinghter. Also without question after the presentation of the Fultons' case to the jury, the following took place outside the presence of the jury, "The Court: But let me ask you this. We met in pretrial conferences and so forth." "Mr. Uhl: Yes." "The Court: And met to discuss how the case was going to proceed." "Mr. Uhl: Yes." "The Court: At your behest and the behest of counsel for Ms. Ashcraft, you all agreed that the case would be presented to the jury as Fulton v. Ashcraft, et al. and to proceed in that vain [sic]." "Mr. Uhl: Correct." "The Court: The case has now been tried to a jury. Judge Cartolano has already ruled on the issue that you're raising. Why shouldn't the issue proceed to the jury to make a determination on the facts?" The transcript continues, "Mr. Helbling: [T]here was a stipulation from opposing counsel to let the jury know that Mr. Whinghter was deceased from other matters unrelated to this case. At no time did they state before the jury was even impaneled or set up did they make this motion before the Court. We have now spent three days in here arguing."
We have reviewed the pretrial statement of Whinghter filed by counsel, which was among the last of a series of filings that addressed legal issues. There is absolutely no mention of any failure to substitute a proper party. But, we also note that counsel for Whinghter stated on the record, "[i]t is a fatal flaw, and I don't think I should have to bring it to anyone's attention. My clients pay me to win cases and they pay me to get dismissals. They don't pay me to do plaintiffs' counsel's work for them." The transcript continues in this manner and, much to the frustration of the trial court, with repeated references to what had occurred before the previous judge. The trial court finally ruled, "Because of the posture in this case and my view as to what I understood, at any rate, that the parties had agreed to do, I am going to deny Mr. Uhl's motion for the time being." On this incomplete record, we have no choice but to presume the validity of the lower court's judgment with respect to denying Whinghter's motion for a directed verdict or for a dismissal. Accordingly, Whinghter's three assignments of error are overruled.
Next, the Fultons contend that, the trial court erred by not granting their motion to dismiss pursuant to Civ.R. 41(A)(2) so that an estate could be opened for Whinghter and an administrator appointed to defend against the Fultons' claims. Although the assignments are not set forth according to the appellate rules, in the interest of justice we address the contentions to the extent we are able to discern their import. The record shows that the parties proceeded to trial and that the jury verdict returned a verdict for the Fultons. The Fultons do not challenge the amount of $63,384. Ashcraft argues that, by not objecting to the amount of the award, the Fultons have suffered no prejudice from the trial court's denial of their motion for a dismissal.
Civ.R. 41(A)(2) provides, in part that, "a claim shall not be dismissed at the plaintiff's instance except upon * * * such terms and conditions as the court deems proper." Depending on the circumstances, the trial court should exercise its sound discretion to determine whether the action may be dismissed without prejudice. Prejudice solely from the prospect of a second trial is not a basis upon which the trial court should deny the Civ.R. 41(A)(2) motion,[9] instead the court must consider all the equities involved. Here, where a personal injury case arising from automobile accidents that occurred in 1998 would have to be relitigated, where there was a change of trial judges, and where the memories of counsel have obviously faded over time as to what had actually transpired off the record, we conclude that the trial court did not abuse its discretion by denying the Fultons' Civ.R. 41(A)(2) motion and proceeding to trial. Accordingly, the Fultons' assignment of error with respect to this issue is overruled.
Finally, with respect to the Fultons' contention that the trial court erred when it denied their motion for prejudgment interest, we note that the Whinghter and Fulton notices of appeal were filed in this court on October 31, 2003 and November 3, 2003, respectively, and that they were limited to the judgment entered by the trial court October 2, 2003. According to the Fultons, a hearing on prejudgment interest did not take place until December 17, 2003. Under the circumstances, we decline to address the Fultons' challenge concerning prejudgment interest in this appeal. Accordingly, we overrule the Fultons' assignment of error.
Therefore, the judgment of the trial court affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Winkler, P.J., Doan and Gorman, JJ.
[1] The surname also appears as Whingter in the record.
[2] See Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384; State ex rel. Montgomery v. R DChem. Co. (1995), 72 Ohio St.3d 202, 203-204, 648 N.E.2d 821.
[3] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
[4] See Fannin v. Tracy (Jan. 23, 1998), 2nd Dist. No. 16511.
[5] See Maryhew v. Yova (1984), 11 Ohio St.3d 154, 156,464 N.E.2d 538.
[6] See Wrinkle v. Trabert (1963), 174 Ohio St. 233,188 N.E.2d 587, paragraph two of the syllabus.
[7] See State ex rel. Beaver v. Konteh, 83 Ohio St.3d 519,521, 1998-Ohio-295, 700 N.E.2d 1256.
[8] See McCarthy v. Lippitt, 150 Ohio App.3d 367,2002-Ohio-6435, 781 N.E.2d 1023, at ¶ 39; Davis v. Wolfe,92 Ohio St.3d 549, 552, 2001-Ohio-1281, 751 N.E.2d 1052.
[9] See Douthitt v. Garrison (1981), 3 Ohio App.3d 254, 256,444 N.E.2d 1068.