DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Lorain YWCA, appeals from a judgment of the Lorain County Court of Common Pleas, Probate Division, that authorized the removal of charitable deed restrictions from a parcel of property and distributed the charitable portion of proceeds received from the sale of the property. This Court affirms.
 {¶ 2} The parcel of property at issue in this case, 65 acres on Leavirt Road in Lorain, was at one time a farm owned by Anna E. Martin until her death in 1964. Pursuant to Ms. Martin's last will and testament, the Lorain Young Women's Christian Association ("Lorain YWCA") received title to the property as trustee. Ms. Martin's will provided that the property "shall be used only for the purposes and for the benefit of the members of said Young Women['s] Christian Association and said farm and the trees located thereon shall, so far as practical and possible, be kept in a beautiful and attractive condition." Lorain YWCA never developed the property, however, nor did it otherwise use the property to fulfill Ms. Martin's charitable intentions.
 {¶ 3} During 1994, Lorain YWCA petitioned the probate court to authorize a sale of the property to the Church on the North Coast ("the Church"), another nonprofit corporation with similar charitable goals that was better suited to fulfill the charitable purposes that Ms. Martin had intended.[1] The probate court authorized a sale of the land to the Church for a price of $317,500, and the proceeds were placed in trust to benefit the Lorain YWCA. Because Anna E. Martin had intended that her property be used for charitable purposes, the probate court imposed several deed restrictions in an attempt to accomplish those purposes. The probate court placed restrictions on the manner in which the Church could use the property, such as limiting the property's use to specific activities, limiting the construction of buildings on the property, and prohibiting alcohol and drags. The deed also required the Church to permit Lorain YWCA members to use many of the facilities that the Church might develop, including meeting rooms, camping facilities and nature trails.
 {¶ 4} The Church later conveyed the property via limited warranty deed to the Beyth hak-Kerem Trust. On May 3, 2004, Louis Kayatin and the other trastees of the Beyth hak-Kerem Trust moved the probate court to modify its 1994 order of sale. Specifically, the trastees sought authorization to sell the property to a private developer without the deed restrictions that had been imposed by the probate court in 1994. The trastees explained that they had expended great sums in maintaining the property but could no longer afford to maintain it for the limited uses set forth in the deed. To fulfill the charitable goals of Anna E. Martin, the trastees proposed converting the property to cash and setting aside a portion of those proceeds for a charitable purpose.
 {¶ 5} On December 2, 2004, Lorain YWCA moved to intervene, asserting that it had an interest in the property that would be extinguished if the deed restrictions were removed. Thus, Lorain YWCA asserted that it was entitled to compensation for its interest. On January 7, 2005, the probate court denied Lorain YWCA's motion to intervene in the action regarding whether the deed restrictions would be removed but granted Lorain YWCA's request to intervene with respect to the distribution of the sale proceeds. That same day, the court removed the restrictions on the property and authorized a sale. Because the court determined that the restrictions on the property had a monetary value, however, it held that a portion of the sale proceeds would be set aside for charitable purposes, to be distributed pursuant to a further order of the court. The probate court further noted that it would hold a hearing, at which it would give an opportunity to be heard to both Lorain YWCA and the attorney general's office, to determine how best to allocate the charitable proceeds.
 {¶ 6} On January 26, 2005, the probate court held a hearing on the issue of how to distribute the $1.2 million of sale proceeds that it had designated for charitable organizations.[2] Following the hearing, the probate court held that it would distribute the proceeds to the Community Foundation of Greater Lorain County to establish the following endowment funds: (1) $150,000.00 for the Anna E. Martin Fund for the Lorain YWCA, as an endowment for the benefit of Lorain YWCA; (2) $150,000.00 for the Anna E. Martin Fund for the Elyria YWCA, as an endowment for the benefit of Elyria YWCA; and the balance of the proceeds to the Anna E. Martin Fund for Women to support any non-profit organization providing services for women, girls, and their families in Lorain County, including YWCAs and YMCAs.
 {¶ 7} Lorain YWCA appeals and raises six assignments of error.
 ASSIGNMENT OF ERROR I "THE PROBATE COURT ERRED WHEN, IN AN ACTION ORIGINALLY FILED BY THE LORAIN Y.W.C.A. FOR INSTRUCTIONS RELATIVE TO THE SALE OF CERTAIN REAL PROPERTY, AND IN CONNECTION WITH PROCEEDINGS IN THE SAME CASE, IT OVERRULED A MOTION BY THE LORAIN Y.W.C.A. TO INTERVENE IN PROCEEDINGS RELATIVE TO THE REQUESTED AUTHORIZATION FOR RE-SALE OF SAME PROPERTY, IN WHICH THE LORAIN Y.W.C.A. RETAINED A CONTINUING INTEREST."
 {¶ 8} Lorain YWCA moved to intervene, contending that it had an interest in the property at issue. On January 7, 2005, the trial court granted Lorain YWCA leave to intervene, but solely for the purpose of distribution of the sale proceeds. Lorain YWCA contends that the trial court erred by refusing to allow it to intervene with respect to whether the court would remove the deed restrictions on the property.
 {¶ 9} A decision whether to grant or deny a motion to intervene is left to the sound discretion of the trial court and will not be reversed absent a demonstration that the trial court abused its discretion.In re Stapler (1995), 107 Ohio App.3d 528, 531. Lorain YWCA contends that it was entitled to intervene pursuant to Civ.R. 24(A)(1), which provides, in relevant part, that anyone shall be permitted to intervene in an action when:
 "the applicant claims an interest relating to the property * * * that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.'" (Emphasis added.)
 {¶ 10} The parties do not dispute that Lorain YWCA had an interest in the property that would be impacted by removing the deed restrictions. The parties do dispute, however, whether the interest of Lorain YWCA was adequately represented by the attorney general's office, which was already a party to the action. Pursuant to R.C. Chapter 109, and the specific terms of the 1994 deed transferring the property to the Church and maintaining a charitable interest for the Lorain YWCA, the attorney general's office had a duty to protect the charitable interests of Lorain YWCA.
 {¶ 11} Although Lorain YWCA contends that the attorney general's office did not adequately represent its interests, it fails to explain how or why its interest was not sufficiently represented. Lorain YWCA points to no shortcomings in the representation of its rights by the attorney general's office, nor does it explain what it would have done to litigate this matter differently.
 {¶ 12} Lorain YWCA never attempted to oppose the removal of the deed restrictions. Through the brief accompanying its motion to intervene, Lorain YWCA asserted merely that its interest in the property had a separate value; and, that if the court authorized an unrestricted sale of the property, Lorain YWCA would lose its interest and should receive compensation. Lorain YWCA did not attempt to assert that an umestricted sale should not go forward; it simply sought monetary compensation for its interest. The court did allow Lorain YWCA to intervene on that issue and to participate at the hearing.
 {¶ 13} The probate court allowed Lorain YWCA to have full input on how the charitable portion of the proceeds of the sale should be divided. Therefore, Lorain YWCA has failed to demonstrate that the trial court abused its discretion by allowing Lorain YWCA to intervene for the limited purpose of determining how the proceeds of the sale would be allocated. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE PROBATE COURT ERRED WHEN IT OVERRULED THE LORAIN Y.W.C.A.'S MOTION TO APPROVE DISTRIBUTION."
 ASSIGNMENT OF ERROR III "THE PROBATE COURT ERRED WHEN, WITHOUT ANY SUPPORTING EVIDENCE OF RECORD, IT ORDERED, THROUGH EQUITABLE DEVIATION FROM THE EXPRESS TERMS OF THE WILL OF ANNA E. MARTIN MAKING A BEQUEST TO THE LORAIN Y.W.C.A. AND ITS MEMBERS, PROCEEDS ARISING FROM THAT BEQUEST TO BE HELD FOR THE BENEFIT OF 'ANY NON-PROFIT ORGANIZATION PROVIDING CHARITABLE PROGRAMS."
 ASSIGNMENT OF ERROR IV "THE DECISION OF THE PROBATE COURT RELATIVE TO DISTRIBUTION OF SALE PROCEEDS IS CONTRARY TO LAW."
 ASSIGNMENT OF ERROR V "THE DECISION OF THE PROBATE COURT RELATIVE TO DISTRIBUTION OF SALE PROCEEDS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR VI "THE DECISION OF THE PROBATE COURT RELATIVE TO DISTRIBUTION OF SALE PROCEEDS CONSTITUTES AN ABUSE OF THE TRIAL COURT'S DISCRETION."
 {¶ 14} This Court will address the remaining assignments of error together because Lorain YWCA argued them jointly. The trial court designated $150,000 of the charitable proceeds for the sole benefit of Lorain YWCA. Lorain YWCA maintains that the trial court was required to designate $450,000 of the charitable proceeds to be used by Lorain YWCA, because that had been the figure requested by Lorain YWCA and it had been the intent of Anna E. Martin that Lorain YWCA receive the sole benefit of her bequest.
 {¶ 15} Lorain YWCA seems to overlook the fact that, although it was the intent of Anna E. Martin that Lorain YWCA would receive 65 acres of property for its sole use, when the probate court allowed Lorain YWCA to sell the property to the Church in 1994, it modified Ms. Martin's charitable bequest pursuant to the equitable doctrine of cy près.
 {¶ 16} The doctrine of cy prÈs is a saving device that permits a court to direct the application of the property held in a charitable trust to a charitable purpose different from that designated in the trust instrument. Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc. (1997),79 Ohio St.3d 98, 106.
 '"Roughly speaking, it is the doctrine that equity will, when the charity is originally or later becomes impossible, inexpedient, or impracticable of fulfillment, substitute another charitable object which is believed to approach the original purpose as closely as possible. It is the theory that equity has the power to revise a charitable trust where the settlor had a general charitable intent in order to meet unexpected emergencies or changes in conditions which threaten its existence.'" (Emphasis added.) Id., quoting Bogert, Trusts Trustees (2 Ed.Rev.1991) 95-96, Section 431.
 {¶ 17} At the time of her death in 1964, Anna E. Martin left the 65 acres of property to Lorain YWCA to be used solely by Lorain YWCA to provide services to members. In 1994, when Lorain YWCA sought permission to sell the property to the Church, the probate court permitted a modification of the original bequest of Anna E. Martin, because Lorain YWCA convinced the court that it was not fulfilling the charitable intent of Anna E. Martin because it was not utilizing the property and it could not afford to continue to maintain it. Thus, the probate court modified Ms. Martin's bequest to allow a transfer of the property to the Church, so that the Church could attempt to fulfill Ms. Martin's intent that the property be used for charitable purposes. Lorain YWCA received cash proceeds at that time, which were put into a charitable trust to be used by Lorain YWCA, and Lorain YWCA also maintained the right to use camping, hiking, and meeting room facilities on the property. Thus, the probate court had already modified the specific intention of Anna E. Martin that Lorain YWCA would be the sole beneficiary of her bequest.
 {¶ 18} Although the Church did use the property for charitable purposes for the next ten years, it had spent hundreds of thousands of dollars on the property and maintaining the 65-acre parcel of property apparently became cost prohibitive, particularly due to frequent vandalism. In 2004, the probate court was again asked to apply the doctrine of cy pres to remove all restrictions from the property so that the property could be sold to a commercial developer.
 {¶ 19} Lorain YWCA does not challenge the applicability of the cy prÈs doctrine to this situation, for it does not assert that the probate court should have kept the 1994 property restrictions on the property. It does not dispute that the Church could no longer afford to maintain the property with the restrictions, that neither the YWCA or its members was using the property, nor does it dispute that the portion of proceeds set aside for charitable purposes was appropriate. Lorain YWCA does not even contend that the court distributed the proceeds to the wrong charitable organizations. Instead, the challenge of Lorain YWCA is that it was entitled to a greater share of the charitable proceeds than the court allocated to it.
 {¶ 20} The sole argument of Lorain YWCA is that the trial court erred in failing to allocate $450,000 of the charitable proceeds to it because Lorain YWCA had proposed such a distribution and it was not directly opposed by any of the parties. Lorain YWCA cites no legal authority, however, to support its position that the probate court was legally required to follow the recommendations of the parties in this situation.
 {¶ 21} The issue before us is whether the court appropriately divided the charitable proceeds between the three charitable organizations involved. How the court employs an equitable doctrine or balances the equities of the parties are matters left to its sound discretion. "Where the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually." McDonald Co. Securities, Inc., Gradison Div.v. Alzheimer's Disease Related Disorders Assn., Inc. (2000),140 Ohio App.3d 358, 366, citing In re Estate ofCogan (1997),123 Ohio App.3d 186, 188. ` "In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy.'" Id., quotingWinchell v. Burch (1996), 116 Ohio App.3d 555, 561. That discretion encompasses the power to fashion any remedy necessary and appropriate to do justice. Id., citing Carter-Jones Lumber Co. v. Dixie Distrib.Co. (C.A.6, 1999), 166F.3d840, 846.
 {¶ 22} Lorain YWCA has failed to demonstrate an abuse of discretion by the trial court in this situation. The court had many undisputed facts before it at the hearing on this issue, including that, for more than 40 years, Lorain YWCA had failed to fulfill any of the purposes of Anna E. Martin's charitable bequest. During the thirty years that it owned the property, Lorain YWCA never used the property for the benefit of its members or for any other purpose. During the ten years after it sold the property to the Church, Lorain YWCA retained rights in the property but never used them. Moreover, for those ten years, Lorain YWCA had failed to make use of the sale proceeds. Lorain YWCA had sold the property for over $300,000, which was placed in trust, but Lorain YWCA had allowed those funds to sit unused.
 {¶ 23} Both the representative from the attorney general's office and the probate court expressed concern that Lorain YWCA had failed to fulfill the charitable intentions of Anna E. Martin for more than 40 years. Anna E. Martin had made a generous bequest of property, that had grown in value to over three million dollars. It had been her intention that the bequest would benefit the women and girls of Lorain County, but Lorain YWCA had done nothing to put either the real property or the 1994 proceeds to such a use. The probate court reasonably explained that it was reluctant to earmark a large percentage of these proceeds to Lorain YWCA because the funds might again sit unused and benefit no one.
 {¶ 24} The CEO of the Community Foundation of Greater Lorain County had spoken at the hearing and explained that the foundation had been in existence for 25 years and that it was in the business of putting funds to charitable use through 400 endowment funds. He further explained that the foundation had over 65 million dollars in assets and that it gives out grants of approximately $3.5 million per year.
 {¶ 25} The probate court reasonably concluded that the Community Foundation would select qualified recipients for these funds, who would put the money to good use, rather than letting it sit unused. The probate court placed all of the charitable proceeds into endowment funds in the name of Anna E. Martin with the Community Foundation of Greater Lorain County, with $150,000 earmarked for the benefit of Lorain YWCA; $150,000 to benefit Elyria YWCA; and $900,000 to benefit "any non-profit organization providing services for women, girls, and their families in Lorain County, including YWCAs and YMCAs."
 {¶ 26} Given the facts before it, the probate court distributed the charitable proceeds in a soundly reasoned manner. Because Lorain YWCA has failed to demonstrate an abuse of discretion in this situation, its second through sixth assignments of error are overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to ran. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
SLABY, P. J., BOYLE, J., CONCUR
[1] Although Lorain YWCA petitioned the court at prior times to sell portions of the property, those sales did not go forward and are not relevant here.
[2] Although the court initially noted that it would distribute $1.25 million in sale proceeds, and later changed that number to $1.2 million, Lorain YWCA has not assigned error to that change by the probate court.