[Cite as *Beatty v. Urbania*, 2019-Ohio-245.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### COLUMBIANA COUNTY

M. JOAN BEATTY, et al.,

Plaintiffs-Appellants,

v.

CHERIE L. URBANIA, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 CO 0023**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2014-CV-599

**BEFORE:**
Kathleen Bartlett, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
AFFIRMED, IN PART; REVERSED, IN PART; REMANDED

---

*Attys. Glenn Osborne and T. Kamenitsa, Jr.*, 3801 Starrs Centre Drive, Canfield, Ohio 44406, for Appellees and

*Atty. Mark Hutson*, 33 Pittsburgh Street, Columbiana, Ohio 44408 and *Atty. Scott Essad*, 721 Boardman-Poland Road, Suite 201, Youngstown, Ohio 44512 , for Appellants.

Dated:  January 24, 2019

**BARTLETT, J.**

**{¶1}** This is an appeal from the trial court's entry granting certain equitable relief in favor of Defendants-Appellees, Cherie and Michael Urbania (hereinafter "Appellees") and against Plaintiffs-Appellants, Joan Beatty, Lee Guterba and Cindy Guterba (hereinafter "Appellants").

**{¶2}** For the following reasons, Appellants' assignment of error has merit with regard to the trial court's grant of lake access/rights to the Appellees. Accordingly, the judgment of the trial court is reversed, in part, and remanded to the trial court for further proceedings according to law and consistent with this Court's Opinion.

**Facts and Procedural History**

**{¶3}** The parties all reside with their homes fronting on Kelly Park Road and abutting Lake Copeland, separated by one rental property (which is owned by the Appellants). The parties have a long history of feuding. There have been two separate lawsuits spanning a period of over seventeen (17) years involving the parties. In a prior lawsuit, Appellees transferred their lake access/rights to the Appellants in exchange for $18,000.00. As a result, the Appellees have not exercised any lake rights or access to the property between Appellees' property and the lakefront since that settlement in 2002.

**{¶4}** In the instant action, the original claims of Appellants, filed in 2014, were dismissed on summary judgment,[1] however, the Appellees' counterclaims remained pending. Appellees' counterclaims alleged trespass, destruction of personal property, nuisance, invasion of privacy/harassment, defamation, intentional interference with business relationships, and abuse of process. The trespass, nuisance, and invasion of privacy/harassment claims were based upon allegations of Appellants putting trash, decaying food, fireworks debris and other items on Appellees' property; "spying" on

---

[1] Appellants original claims against Appellees alleged breach of contract (based upon operation of a business from Appellees' home); breach of declaration of restrictions (also based on Appellees' operation of a business from the home); declaratory relief (based upon the deed restrictions); invasion of privacy (due to video cameras Appellees placed on their property); false light invasion of privacy (based upon Facebook posts after Appellees' kitten was killed); and defamation (also related to the Facebook posts). All of the claims were dismissed on summary judgment, and it was further determined that the deed restrictions which Appellants relied upon in their complaint were not applicable to the Appellees' property.

Appellees; and claims that rifles and other firearms were discharged near, towards, and across the property. The destruction of property claim was based upon a kitten owned by the Appellees that died from a gunshot wound which Appellees alleged was inflicted by Appellants. The Appellees' claims for defamation and intentional interference with business relationships pertained to actions taken by the Appellants with regard to Appellee Cherie Urbania operating a business called "The Pet Angel." Appellees further alleged abuse of process where Appellants had constructive notice that the deed restrictions upon which they based their claims did not apply to Appellees' property and continued to prosecute those claims, resulting in great expense and emotional distress to Appellees. Appellees' prayer for relief in their Seconded Amended Counterclaim included compensatory and punitive damages for the various tort claims; injunctive relief, including a permanent injunction restraining Appellants' conduct; enjoining Appellants from further invasions of Appellees' privacy; issuance of a civil restraining order against Appellants; and "such other relief that the Court deems just and proper." (Second Am. Counterclaim at 11-12).

{¶5} The case proceeded to trial on January 24, 2017. Following two days of trial, the parties engaged in settlement negotiations before the third day of trial resumed.

{¶6} The trial court excused the jury on the third day of trial, and stated in its 1/27/17 judgment entry:

> On Thursday, January 26, 2017, just prior to the resumption of the proceedings, counsel advised the Court that they were very close to a negotiated settlement of the issues. The Court, based on the development of the evidence to that point, finds that this case is not one in which the jury can render a verdict that adequately addresses and disposes of the issues at bar. That is because the jury's only option is to return a monetary award.
>
> The Court removes the case from jury consideration and directs the parties and counsel to continue to negotiate in good faith on the remaining issues, which are real estate in nature. **In the absence of a full settlement of all issues, any unresolved matters shall be submitted**

**to the Court by memorandum not later than 4:00 p.m. on Friday, February 10, 2017**.

(1/27/17 JE).

{¶7} Appellees filed a Trial Brief on January 27, 2017 which gave a brief summary of the pending claims, and stated that most of the relief sought by Appellees was based upon questions of fact for the jury to decide, but a few items were within the exclusive scope of the bench. Appellees highlighted that "[i]n our Complaint/Countersuit, we requested injunctive relief from the Court." (1/27/17 Trial Brief at 3). Appellees stated that in addition to asking for judgment in their favor from the jury, they would "request injunctive relief directly from the Court prior to submitting factual questions for the deliberation of the jury," which included:

> Counterclaimants/Defendants ask that the Court order that Counterdefendants/Plaintiffs remove the chicken wire fence that was installed directly behind the Urbania property. Additionally, we ask that the Court grant injunctive relief in our favor by issuing an order preventing Counterdefendants/Plaintiffs from dumping garbage on or behind the land of the Urbanias, shooting firearms at or towards the Urbanias or their property, shooting fireworks are [sic] or towards the Urbanias or their property, and any other forms of harassment that Defendants may show require injunctive relief.

(1/27/17 Trial Brief at 4).

{¶8} On February 10, 2017, Appellees submitted a Memorandum of Position and Proposed Order. Appellees stated that their proposed order represented "a compromise of the original Settlement Agreement which was provided to opposing counsel and presented to the Court at the final Pretrial of this matter on January 9, 2017." (Memo. of Position at 1). Appellees further stated that by the morning of the third day of trial, "both counsel believed that the parties were close to resolving the case." (Memo. of Position at 1). Appellees outlined three main points of disagreement as: first, the dividing line along the southern property boundary of the Appellees to

Case No. 17 CO 0023

separate the parties, involving Arborvitae to be planted and moving a chicken wire fence; second, the disagreement on the depth of the easement which Appellees will have behind their property running towards Copeland Lake, whereas Appellants proposed a 15 foot easement compared to the 150 foot easement that Appellees sought for the entire 250 foot north-south portion of the property; third, disagreement regarding rights behind the easement, where Appellees sought the ability to use that property "for the purpose of traveling to the edge of the lake for fishing and perhaps launching a canoe for paddling or fishing on the lake itself." (Memo. of Position at 2-3). Appellees noted that this would represent a much reduced lake right compared to what was originally enjoyed before the disputes arose among the parties, and that Appellee Cherie Urbania "testified that she was strong-armed by Guterbas' constructive denial of her lake rights in the 90's. This fact, coupled with the mutual mistake of deed restriction inapplicability ultimately resulted in the abuse of process claim, but also ultimately deprived Cherie of a valuable property right." (Memo. of Positon at 3). Appellees also noted that both parties sought to maintain the property between the easement and the lake, and stated that a joint right of maintenance may be one solution.

{¶9} Appellees stated "Defendants-Counterclaimants submit the proposed Agreed Order for the Court's consideration under its equity jurisdiction in lieu of continuing to jury verdict at the trial of this matter, which commenced on or about January 24, 2017." (Memo. of Position at 3). They further stated that their filings were submitted in compliance with the trial court's January 26, 2017 order (which was file-stamped January 27, 2017). In their Memorandum, Appellees "urge the court to consider the enclosed proposal for easement rights, use of real estate and non-interference as consideration in lieu of compensation for their claims of abuse of process, intentional destruction of domestic animal, trespass, invasion of privacy, and other tort claims in the matter." (Appellees' Memorandum of Position at 3). Appellees further concluded:

> While money does not solve the problem, strong, complete, physical
> division between the parties may. The parties and the Court all agree on
> this point, in principle. Further, extension of Urbania's land and lake
> privileges goes a long way towards providing Urbanias with some

Case No. 17 CO 0023

measure of compensation for this loss. It presents all parties with their last chance for peace and privacy. By combining principles of legal compensation with broad principles of equity, this Court can further the ends of actual justice and fair play with a broad stroke of its pen.

(Memo. of Position at 5).

{¶10} On February 13, 2017, Appellants submitted a Post-Trial Memorandum with an Agreed Order for Settlement, Release and Non-Interference, with Grant of Easement. The Memorandum states that it was submitted "to assist this Court in coming to a decision in connection with certain points or areas that remain in dispute between the Plaintiffs and the Defendants * * * [a]s an additional aid, Plaintiffs are submitting herewith their Proposed Order for Settlement, Relief, Non-Interference with Grant of Easement." (Post Trial Memo. at 1). Appellants detail in their Memorandum that "[f]ollowing two days of testimony, settlement discussions which had stalled prior to the start of trial were reconvened. As a result of such renewed discussions it appeared that settlement had been reached; or at least that enough progress had been made so that further testimony to the jury may in fact have been counterproductive and unnecessary." (Post Trial Memo. at 2). Appellants discuss their initial proposal "which included points designed to separate the parties and hence avoid renewed confrontations, while at the same time provide the Urbanias with some of what they had testified had been lost." (Post Trial Memo at 2). Appellants state that their first offer was to provide Appellees the ability to care for a section of property beyond their western boundary with dimensions of 15 feet from East to West and 250 feet from North to South (the "buffer"); opening up a wide swath of the Beatty property immediately West of the "buffer" and clean it up and care for it as had been done several years ago; plant arborvitae along the southern border of the property; and Appellants would limit their presence on the land behind the balance of the 250 foot-width running north-south to purposes of maintenance of the grounds and dam located north of that property. (Post Trial Memo. At 2-3). Appellants further created a sketch of what was being proposed and submitted it as an exhibit with their proposed order. (Post Trial Memo., Ex. A).

{¶11} Appellants noted in their Memorandum that the parties were in agreement

that the Court Order should contain a listing of prohibited actions, listing various forms of harassment and actions that would be considered a nuisance. Appellants further outlined the three remaining areas of disagreement between the parties: first, the parties proposed different dimensions of the "buffer" area; second, the parties proposed competing interests in mowing and maintaining the "buffer" area; and third, Defendants previously sold their lake rights for $18,000.00, and now sought to regain lake privileges or rights to the extent of traversing the "opened-up area" and/or the "License Area" to be able to utilize the lake for fishing and boating. (Post Trial Memo. At 4). Appellants disagreed with Appellees' proposals, stating that they would contradict the goal of separation of the parties, that responsibility for maintenance or mowing of the area between the Appellees' property and the lakefront "will undoubtedly be a point of contention," and that granting renewed lake privileges would be "putting the parties in either close proximity of one another or creating a race to see who reaches the lake shore first," as well as the "negative effect [lake privileges would likely have] on value or marketability of the [Beatty] property." (Post Trial Memo. at 4).

**{¶12}** Appellants' Post Trial Memorandum concluded:

> In the end, the parties have made considerable effort to resolve the differences that led to the filing of the suit and counter suit. These efforts have yielded areas of agreement as cited above. **Left for the consideration of this Court are the three principal areas of disagreement also cited herein.** While both Counsel would urge this Court to adopt their respective version of an Agreed Order and would oppose the wholesale adoption of the other's, both Counsel would agree in urging this Court, if willing, to visit the Kelly Road properties to be better able to see what has been requested or opposed and why.

(Post Trial Memo. at 5) [emphasis added].

**{¶13}** Both parties' proposals involved the grant of an easement to the Appellees for a portion of the property between their home and the lakefront. Appellees proposed an easement appurtenant; Appellants proposed a conditional easement in gross. The drawing submitted by Appellants proposed a 15' "buffer" area running behind the

Appellees' property, and a limited 100' wide area between the "buffer" area and the lakefront to be cleaned up with trees trimmed and property mowed to the lake (as compared to the trial court's order which grants Appellees access over the entire 250' wide parcel). Also, in comparing the proposed orders submitted by the parties, it is noted that Appellants submitted an "Agreed Order" which included signature lines for the trial judge as well as the parties, whereas Appellees submitted a "Proposed Order" which only included a signature line for the trial judge.

{¶14} It does not appear from either parties' filings that the potential restoration of lake access or privileges was raised during the third day of trial which resulted in the dismissal of the jury. There is no transcript of the discussions that took place among counsel and the trial court. This Court is limited to the information contained in the post-trial filings of the parties. It appears that the issue of restoration of lake access or privileges was raised in Appellees' Memorandum of Position and Proposed Order filed on February 10, 2017. There was no mention of restoration of lake privileges in Appellees' Trial Brief filed on 1/27/17.

{¶15} On June 28, 2017, with the matter still pending, Appellants filed a Motion to Supplement the Record or in the Alternative to Return Matter to Trial Docket, stating that the counterclaims of Appellees had sought monetary damages, and none of the claims were focused on or sought equitable remedies, but that the Appellees were seeking equitable remedies at the resolution stage following the jury trial. Appellants argued that no evidence was presented as to the proposed equitable remedy, and the restoration of lake privileges was never sought in the counterclaims of Appellees. Appellants requested the opportunity to offer evidence surrounding the dispute of restoration of lake privileges at an evidentiary hearing, or in the alternative to restore the matter to the trial docket, stating that the record would not be complete if one of those actions was not permitted.

{¶16} On July 3, 2017, Appellees filed a Memorandum in Opposition to the Motion to Supplement the Record or in the Alternative to Return the Matter to the Trial Docket. Appellees stated that during the trial the parties came very close to resolution, but remaining matters in dispute were the specific covenants to "open up" the area behind the Urbania property, the dimensions of that area, the location of the borders,

and maintenance for the area. Both parties agreed to allow the trial court to supplement the remaining aspects of an eventual order, and as a result the jury was released without objection by either party. Appellees viewed the Motion as Appellants changing their minds and hoping to change the result by taking "another bite at the proverbial apple."

**{¶17}** On July 19, 2017, the trial court issued a judgment entry overruling the Motion to Supplement the Record or in the Alternative to Return the Matter to the Trial Docket, noting that the court would concentrate its efforts on issuing a final order in the near future.

**{¶18}** On July 28, 2017, the trial court issued its Opinion and Final Order which is the subject of the current appeal. Upon receipt by Appellees of the trial court's order, they immediately began to clear the "license area" behind Appellees' property in accordance with the trial court's order.

**{¶19}** On August 2, 2017, Appellants filed a Motion to Stay Proceedings to Enforce Judgment.

**{¶20}** On August 3, 2017, Appellees filed an Emergency Motion for Contempt Citation for Plaintiffs' Violation of the Court's Order (Request for Emergency Hearing or Action). Appellees alleged that since the filing of the court's Order, Appellants committed "numerous actions impermissible by this Court's Order," including walking directly behind the Appellees' property while filming and yelling obscenities, driving a truck on the restricted area, as well as other alleged violations detailed in the Motion. (8/3/17 Motion at 2).

**{¶21}** On August 3, 2017, the trial court issued a notice that the Motion to Stay Proceedings to Enforce Judgment would be decided on the briefs on August 10, 2017 and that any response briefs were to be timely filed.

**{¶22}** On August 4, 2017, Appellees filed a Memorandum in Opposition to Motion for Stay of Proceedings to Enforce Judgment Pending Appeal.

**{¶23}** Also on August 4, 2017, Appellants filed a Motion to Stay Judgment Pending Appeal with this Court.

**{¶24}** On August 10, Appellees filed a Memorandum in Opposition of the Motion to Stay filed with this Court.

**{¶25}** On August 15, 2017, Appellants filed a Memorandum in Opposition to Emergency Citation for Contempt.

**{¶26}** On August 21, 2017, the trial court entered a judgment entry overruling Appellants' Motion to stay the enforcement of the court's July 28, 2017 order.

**{¶27}** On August 24, 2017, the trial court issued a judgment entry in the contempt proceedings. Appellant Lee Guterba had admitted to committing one or more violations of the 7/28/17 order and the trial court therefore found him in contempt, finding that he may purge his contempt by remaining in strict compliance, discouraging any violations by relatives or invitees and that he should not be complicit in any violations by those persons. The court awarded attorney fees for the contemptuous conduct, and requested an affidavit of fees associated with the contempt and any objections to those fees to be filed. Counsel for Appellants raised the issue that the current decree precludes the Appellants' access to a certain bathhouse, dock, and merry-go-round on the premises.

**{¶28}** On August 30, 2017, Appellees filed a Supplemental Memorandum in Opposition to Motion for Stay with this Court.

**{¶29}** On August 31, 2017, Appellants filed a Supplemental Motion to Stay Judgment Pending Appeal with this Court.

**{¶30}** On September 5, 2017, this Court issued a judgment entry overruling the motion for stay, and issued a limited remand for the trial court to issue a decision on the stay pending in that court.

**{¶31}** On September 8, 2017, Appellees filed a Memorandum in Opposition to Supplemental Motion for Stay with this Court.

**{¶32}** On September 25, 2017, this Court issued a judgment entry overruling the supplemental motion for stay, finding the trial court's reasoning persuasive that there were no compelling reasons to grant a stay in this appeal.

**{¶33}** On September 14, 2017, Appellees filed a Report to the trial court on Status of Guterba Opportunity to Purge Contemptuous Actions with Request for Further Action.

**{¶34}** On November 1, 2017, the court issued a judgment entry in the amount of $2,568.50 against Appellant Lee Guterba to be paid to Appellees representing the

attorney fees associated with the 8/24/17 contempt entry.

**Sole Assignment of Error: Appellants argue the trial court erred when it forced an irrevocable license agreement upon the Appellants when they were only being sued for money damages. The trial court should not have rendered an equitable judgment when none was prayed for.**

{¶35} Appellants contend that questions of law related to an easement are reviewed by an appellate court de novo, without deference to the trial court's conclusion, and have cited *Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34, in support of this position. Appellants' reliance is misplaced where the cited case refers to whether a de novo or abuse of discretion standard is applied in determining whether an arbitration clause is unenforceable. Appellees assert that the standard of review applicable to claims for equitable relief is abuse of discretion. *Sandusky Properties v. Aveni,* 15 Ohio St.3d 273, 274-275, 473 N.E.2d 798 (1984). Based upon the equitable nature of the trial court's decision, we agree.

{¶36} In equitable matters, "the court has considerable discretion in attempting to fashion a fair and just remedy." *Winchell v. Burch*, 116 Ohio App.3d 555, 561, 688 N.E.2d 1053 (11th Dist. 1996). The court "has the power to fashion any remedy necessary and appropriate to do justice in a particular case." *McDonald & Co. Sec., Inc., Gradison Div. v. Alzheimer's Disease & Related Disorders Assn., Inc.*, 140 Ohio App.3d 358, 366, 747 N.E.2d 843 (1st Dist. 2000). When a party invokes the trial court's equitable jurisdiction, the trial court possesses discretionary authority to weigh the parties' competing interests and exact an equitable division of their property rights. *Murray v. Lyon*, 95 Ohio App.3d 215, 221, 642 N.E.2d 41 (9th Dist. 1994), citing *Ohio Power Co. v. Bauer*, 60 Ohio App.3d 57, 59–60, 573 N.E.2d 780 (5th Dist. 1989). A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161,

169, 559 N.E.2d 1301(1990).

**{¶37}** The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676–678, 148 N.E. 362 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008–Ohio–1720, 892 N.E.2d 454, ¶ 15 (8th Dist.2008). "An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination, made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985), citing *State v. Jenkins,* 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).

**{¶38}** Both parties submitted post-trial memoranda and proposed orders which contained equitable relief as a means of resolving the case. Disputes remained regarding the extent and details of the equitable relief.

**{¶39}** The proposed order of Appellees included "a limited, irrevocable license to use the land directly behind (and west of) the [proposed] easement to the edge of the said Lake Copeland to walk to the lakeshore, fish, launch a canoe or other small non-motorized watercraft, provided however that Michael and Cherie Urbania shall insure and provide proof of liability insurance * * * ." (Appellees' 2/10/17 Proposed Order at 3). The proposed order further stated: "Urbanias and their invitees shall have the right to fish from the shoreline of Copeland Lake directly behind their property and to launch a non-motorized canoe or small boat into the lake for the purpose of fishing or paddling around the lake, but shall use the lake for no other purposes, and shall not access the shoreline of Copeland Lake except from the area of the license." (2/10/17 Proposed Order at 5).

**{¶40}** Appellants identified three principal areas of disagreement among the parties in their Post-Trial Memorandum:

First, while Plaintiffs have proposed a Buffer of 15 feet; Defendants have proposed this same area be termed an Easement Appurtenant with an east-west dimension of 150 feet.

Second, while Plaintiffs have agreed to open-up a 100-foot-wide swath extending in an east-west direction to the lake shore and to maintain this area with trimmed trees and mowed lawn; Defendants have proposed the area west of the Easement as an area whereby Defendants are granted a license to mow the same, (the "License Area").

Third, while Defendants previously sold their lake rights for $18,000.00, they now seek to regain lake privileges or rights to the extent of traversing the opened-up area and/or the License Area to be able to utilize the lake for fishing and boating.

(Appellants' 2/13/17 Post Trial Memorandum at 4).

{¶41} Based upon the review of the limited record after the case was removed from jury consideration, it is clear that the parties negotiated toward a settlement that was equitable in nature, with each proposing different access to the property (or a portion thereof) between Appellees' property and the lake. The parties had full opportunity to present their issues to the trial court through: post-trial memoranda; the motion to supplement the record or return the matter for trial; meetings with the trial court and counsel; and a site visit with the trial court judge to examine the area in dispute. The trial court subsequently weighed the parties' interests and rendered a decision. The trial court did not abuse its discretion in granting an irrevocable license to Appellees to access and maintain the land between their property and the lake. The property between Appellees' property and the lake was the crux of the dispute as appears from the post-trial filings. Both parties proposed different levels of access and dimensions of the property between Appellees and the lake. It was within the trial court's discretion to fashion an equitable remedy that took into account each of the proposals that were submitted by the parties with regard to the disputed area between Appellee's home and the lake.

Case No. 17 CO 0023

**{¶42}** However, the granting of the lake access/privileges, which were relinquished by Appellees in 2002 for the sum of $18,000.00, was an abuse of the trial court's discretion. Based upon the record before this Court, granting lake access was far above and beyond the injunctive relief that Appellees requested pertaining to the behaviors of Appellants that they sought to restrain. Because there is no mention of the restoration of lake access or privileges in the record prior to the Appellees' 2/10/17 Memorandum, there is no way of knowing if this was an issue that the parties had considered on the third day of trial when the jury dismissed, or if this was something that Appellees decided to add on to their Proposed Order following the breakdown in negotiations. If this was not considered during those negotiations, but rather raised for the first time in Appellees' Memorandum of Position and Proposed Order, it is unreasonable to expand the area of access beyond what the parties had anticipated and negotiated. The trial court was requested to "close the gap" in settlement negotiations where the parties could not resolve specifics with regard to the mechanics of creating the separation among the parties and the proposed access area between the Appellees' property and the lake. The restoration of lake access and privileges exceeds the scope, and represents an abuse of discretion by the trial court.

**{¶43}** Thus, based on all of the above, the sole assignment of error has merit with regard to the restoration of lake access/privileges, and the judgment of the trial court is affirmed in part, reversed in part, and remanded on that limited basis.

**Donofrio, J., concurs.**

**Waite, J., concurs.**

Case No. 17 CO 0023

---

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained, in part, and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed in part, reversed in part, and remanded on a limited basis. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**