[Cite as *Beatty v. Urbania*, 2020-Ohio-3361.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

M. JOAN BEATTY ET AL.,

Plaintiffs-Appellees,

v.

CHERIE L. URBANIA ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CO 0036**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2014 CV 599

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
2019 Judgment Entry Vacated.  2017 Judgment Entry Modified and Reinstated.

---

*Atty. Mark Hutson,* 33 Pittsburgh Street, Columbiana, Ohio 44408, for Plaintiffs-Appellees and

*Atty. Glenn Osborne* and *Atty. T. Scott Kamenitsa, Jr.,* Friedman & Rummell Co., LPA, 3801 Starrs Centre Drive, Canfield, Ohio, 44406, for Defendants-Appellants.

Dated: June 15, 2020

_____

**D'APOLITO, J.**

**{¶1}** Defendants-Appellants Cherie and Michael Urbania appeal the September 12, 2019 judgment entry of the Columbiana Court of Common Pleas ("2019 Judgment Entry") modifying the trial court's July 28, 2017 entry ("2017 Judgment Entry") pursuant to our limited order of remand. Appellants correctly argue that the trial court acted outside the parameters of the limited remand when it modified the previous order to restrict Appellants' access to the licensed property for maintenance purposes only. For the following reasons, the 2019 Judgment Entry is vacated and the 2017 Judgment Entry is reinstated with the modifications contained herein.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** Appellants and Plaintiffs-Appellees Lee and Cindy Guterba are neighbors, whose residences are situated along Copeland Lake and separated by a rental property owned by Appellants. Hostilities between the parties have persisted for over twenty years. Plaintiff-Appellee M. Joan Beatty is the owner of Copeland Lake and the 250 feet of land west of Appellants' property line to the lake's edge, which is the subject of this appeal ("Beatty property"). Beatty is Cindy Guterba's mother.

**{¶3}** This case represents the second litigation between the parties, the first having been resolved by a 2002 settlement agreement, in which Appellants relinquished their lake privileges in exchange for $18,000.00. In the 2002 release, Appellants agreed to quit claim deed their lake privileges to Appellees and to execute a termination of the easement of lake privileges. The 1967 easement defines "lake privileges" as "swimming, boating, fishing and picnicking privileges, and with this right including the privilege of locating and using a boat, rowboat, or canoe on such lake, provided, however, that the use of motors on such boat shall be prohibited."

**{¶4}** This is the second appeal taken from this 2014 action. In order to avoid confusion, Appellants will be referred to as "Appellants" or "the Urbanias," despite the fact that they were the appellees in the first appeal. Likewise, Appellees will be referred to as "Appellees," although they were the appellants in the first appeal.

**{¶5}** The complaint and counterclaims in this 2014 action included competing claims for trespass, invasion of privacy, and defamation, as well as the accusation that Cindy had killed Appellants' kitten with a rifle. Both parties sought monetary damages and injunctive relief. However, neither party prayed for the equitable relief ultimately fashioned by the trial court.

**{¶6}** Appellees' claims were dismissed on summary judgment, while Appellants' counterclaims proceeded to a jury trial. In addition to the counterclaims listed above, Appellants asserted counterclaims for destruction of personal property, nuisance, intentional interference with business relationships, and abuse of process. The trespass, nuisance, and invasion of privacy/harassment claims were based on allegations that Appellees deposited trash, decaying food, fireworks debris and other items on Appellants' property; "spied" on Appellants; and discharged rifles near, towards, and across the property. The destruction of property counterclaim was predicated upon the dead kitten. The counterclaims for defamation and intentional interference with business relationships pertained to actions taken by Appellees with regard to Cherie Urbania's operation of a business called "The Pet Angel." Finally, Appellants asserted a counterclaim for abuse of process, alleging that Appellees had constructive notice that the deed restrictions cited in their complaint were not applicable to Appellants' property. Appellants' prayer for relief included compensatory and punitive damages for the various tort claims; injunctive relief, including a permanent injunction to enjoin Appellees' conduct and prohibit further invasions of Appellants' privacy; issuance of a civil restraining order against Appellees; and such other relief that the Court deemed just and proper. (Second Am. Counterclaim at ¶ 11-12).

**{¶7}** On the third day of trial, the parties informed the trial court that they were very close to resolving the matter through a settlement agreement. The proposed settlement was not monetary, but, instead, involved the creation of an easement or license in favor of Appellants on some portion of the Beatty property, with two goals in mind: (1) to provide Appellants with some exclusive access and use in order to create a "buffer" between the feuding neighbors; and (2) to restore Appellants' view of Lake Copeland, which had become obstructed due to Appellees' failure to maintain the Beatty property.

**{¶8}** The parties agreed to dismiss the jury and convert the matter to a bench trial, so that the trial court could resolve three remaining issues and fashion a remedy through the use of its equitable powers. Despite the availability of a court reporter, the parties did not recite the agreement into the record. The trial court excused the jury and issued a judgment entry, which reads, in pertinent part:

> On Thursday, January 26, 2017, just prior to the resumption of the proceedings, counsel advised the Court that they were very close to a negotiated settlement of the issues. The Court, based on the development of the evidence to that point, finds that this case is not one in which the jury can render a verdict that adequately addresses and disposes of the issues at bar. That is because the jury's only option is to return a monetary award.
>
> The Court removes the case from jury consideration and directs the parties and counsel to continue to negotiate in good faith on the remaining issues, which are real estate in nature. In the absence of a full settlement of all issues, any unresolved matters shall be submitted to the Court by memorandum not later than 4:00 p.m. on Friday, February 10, 2017.

(1/27/17 J.E.) Pursuant to the trial court's order, the parties filed post-trial briefs and proposed judgment entries. The post-trial briefs reflected the parties' agreement to submit the evidence to the trial court, and their understanding that the trial court's resolution would result in the imposition of some sort of limited property interest in the Beatty property in favor of Appellants.

**{¶9}** The post-trial briefs addressed three issues remaining for resolution by the trial court. Although the parties agreed that a buffer zone should be carved from the Beatty property, which was to be bordered by Arborvitae along its southern border, they could not agree on the dimensions of the zone. Appellees advocated in favor of a 15-foot buffer zone east to west, extending the entire length of Appellants' property line (250 feet north to south), through the imposition of a conditional easement. Appellants, on the other hand, advocated in favor of a 150-foot buffer zone east to west, extending the entire length of Appellants' property line, through the imposition of an easement.

{¶10} The second issue for the trial court's consideration was the dimensions of the area west of the buffer zone to the lake's edge. Appellees advocated in favor of the imposition of a license on a 100-foot area north to south (rather than the entire length of Appellants' property line) extending from the buffer zone to the lake. Appellants advocated in favor of the imposition of a license on the remaining 100 feet west to the lake extending the entire length of Appellants' property line, which would allow them to mow the grass, and fish and boat in Lake Copeland.

{¶11} The third issue was lake privileges. Appellees argued that Appellants had relinquished their lake privileges in 2002. Appellants countered that they only sought to recover fishing and boating rights, rather than all of the lake privileges granted in the 1967 easement.

{¶12} After the post-trial briefs were filed, Appellees filed a motion to supplement the record or return the matter to the trial docket, in order to offer additional evidence regarding the dispute over the restoration of lake privileges. The motion was subsequently overruled.

{¶13} In the 2017 Judgment Entry, the trial court resolved the foregoing conflicts as follows: A license is imposed on the entire Beatty Property in favor of the Urbanias. The license was to be "permanent, exclusive, continuous, irrevocable, and personal to [Appellants] so long as they remained owners of their residence." (2017 Order, ¶ A1.) The 2017 Judgment Entry reads, "The license shall be absolute, without reservation and shall include all rights to use said parcel, to landscape and maintain said parcel, *and to use the property as it is were [sic] their own property * * *"* (Emphasis added)(*Id.*) The 2017 Judgment Entry authorizes Appellants to "open up" their view of the lake by clearing from the Beatty property any "undergrowth, deadfall, immature saplings, weeds and debris, and by trimming the branches of trees up from the ground * * *." (*Id.*, unnumbered paragraph captioned "Opening Up and Landscaping".)

{¶14} With respect to the lake, the 2017 Judgment Entry authorizes Appellants, their families and invitees "to use the licensed land to the edge of the said Lake Copeland: to walk to the lakeshore, enjoy the property adjacent to the lake, fish on the lake, and launch a canoe or other small non-motorized watercraft, for recreational use" provided that Appellants furnished proof of liability insurance to Appellees. (*Id.*, ¶ A2.) Appellants

and their invitees are granted the right to "fish from the shoreline of Copeland Lake directly behind their property and to launch a non-motorized canoe or small boat into the lake for the purpose of fishing or paddling around the lake at any times of their choosing but only upon waters of the northerly portion of the lake from an approximate imaginary line extending straight through the lake of the same vector as [Appellants'] southerly property line to the west shore of Copeland Lake." (*Id.,* ¶ g.) Both parties are cautioned to exercise reasonable care to avoid confrontations when Appellants "are using the licensed area or the lake for recreation, maintenance, fishing or boating." (*Id.,* ¶ f.)

{¶15} The only access to the Beatty property afforded to Appellees by the 2017 Judgment Entry is to the 30 feet preceding the lake's edge for maintenance purposes only. In the schematic attached to the 2017 Judgment Entry, the 30-foot area is demarcated and described as follows: "Lee Guterba limited access area. Lee Guterba, Evan Guterba (or professional landscaper of Lee's choice) may access for repairs or maintenance to the dam and mowing." In addition, the trial court drew two arrows pointing to the dotted line demarcating the Lee Guterba limited access area with the notation, "Urbania may use this area for lake access, fishing, etc."

{¶16} Appellees appealed the 2017 Order in the first appeal. They argued that the trial court was without authority to impose an equitable remedy not prayed for by either party in their original pleadings. Appellees further argued that we could not presume that the parties consented to the equitable jurisdiction of the trial court due to the trial court's failure to recite the parties' alleged consent into the record. Based on the post-trial briefs and proposed entries submitted by the parties, we ultimately concluded that the parties jointly invoked the trial court's equity jurisdiction.

{¶17} Pertinent to the current appeal, we next considered whether the trial court had abused its discretion in fashioning the equitable relief. We wrote:

> The trial court did not abuse its discretion in granting an irrevocable license
> to [the Urbanias] to access and maintain the land between their property
> and the lake. The property between [the Urbanias'] property and the lake
> was the crux of the dispute as appears from the post-trial filings. Both
> parties proposed different levels of access and dimensions of the property
> between [the Urbanias] and the lake. It was within the trial court's discretion

to fashion an equitable remedy that took into account each of the proposals that were submitted by the parties with regard to the disputed area between Appellee's home and the lake.

However, the granting of the lake access/privileges, which were relinquished by [the Urbanias] in 2002 for the sum of $ 18,000.00, was an abuse of the trial court's discretion. Based upon the record before this Court, granting lake access was far above and beyond the injunctive relief that Appellees requested pertaining to the behaviors of Appellants that they sought to restrain. Because there is no mention of the restoration of lake access or privileges in the record prior to the [the Urbanias' post-trial briefs], there is no way of knowing if this was an issue that the parties had considered on the third day of trial when the jury dismissed, or if this was something that Appellees decided to add on to their Proposed Order following the breakdown in negotiations. If this was not considered during those negotiations, but rather raised for the first time in Appellees' Memorandum of Position and Proposed Order, it is unreasonable to expand the area of access beyond what the parties had anticipated and negotiated. The trial court was requested to "close the gap" in settlement negotiations where the parties could not resolve specifics with regard to the mechanics of creating the separation among the parties and the proposed access area between the [Urbanias'] property and the lake. The restoration of lake access and privileges exceeds the scope, and represents an abuse of discretion by the trial court.

Thus, based on all of the above, the sole assignment of error has merit with regard to the restoration of lake access/privileges, and the judgment of the trial court is affirmed in part, reversed in part, and remanded on that limited basis.

*Beatty v. Urbania*, 7th Dist. Mahoning No. 17 CO 0023, 2019-Ohio-245, 131 N.E.3d 413, ¶ 41-43.

Case No. 19 CO 0036

**{¶18}** On remand, the trial court ordered the parties to file briefs interpreting the limited remand order. Appellants argued that only their license to fish and boat on the lake should be stricken from the 2017 Order. Appellees argued that the license should be stricken in its entirety because the only reason that the trial court imposed the license was to provide access to the lake to Appellants.

**{¶19}** In the 2019 Judgment Entry, the trial court recognizes our conclusion that "granting of lake access was far above and beyond injunctive relief that [the Urbanias] requested." (2019 Order, p. 1.) The trial court further recognizes our conclusion that "it was unreasonable to expand the area of access beyond what the parties had anticipated and negotiated." (*Id.*) Finally, the trial court observes that it was "requested to 'close the gap' in settlement negotiations where the parties could not resolve specifics with regard to the mechanics of creating the separation among the parties and the proposed access area between [the Urbanias'] property and the lake." (*Id.*)

**{¶20}** Because we "[did] not identify lake access/privilege," the trial court disregards the remainder of our judgment entry and isolates the sentence, "The trial court did not abuse its discretion in granting an irrevocable license to [the Urbanias] to access and maintain the land between their property and the lake." *Beatty, supra,* ¶ 41. Based on this single sentence, the trial court concludes that "[t]he only purpose for the Urbanias to access the licensed area is for maintenance." (*Id.*) As a consequence, the remainder of the 2019 Judgment Entry removes all language from the 2017 Judgment Entry granting recreational use of the Beatty property to Appellants.

**{¶21}** The final paragraph of the 2019 Judgment Entry reads, in pertinent part:

The licensed area should only be accessed for the limited purpose of maintaining the area for the Urbanias to have a view of the lake from their property. There is no other purpose, adding any additional "privileges" would be inconsistent with the Seventh District Court of Appeals decision. For clarification, this access shall not be daily and only for the purpose of maintaining the licensed area. Any findings of orders from the [2017] decision not specifically mentioned, stricken or amended shall continue in full force and effect.

(*Id.,* p. 5).  This timely appeal followed.

## ANALYSIS

**THE TRIAL COURT MISAPPLIED THIS COURT'S DECISION AND VIOALTED THE LAW OF THE CASE DOCTRINE ON LIMITED REMAND MODIFYING AND RESTRICTING [APPELLANTS'] ACCESS AND USE OF THE IRREVOCABLE PERMANENT LICENSE.**

**{¶22}**  Pursuant to the law-of-the-case doctrine, a trial court is without authority to extend or vary the mandate issued by a superior court, and, at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 16, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 4, 462 N.E.2d 410 (1984).   The law-of-the-case doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. *State ex rel. Mullins v. Curran*, 131 Ohio St.3d 441, 2012-Ohio-685, 966 N.E.2d 267, ¶ 14.   The rule serves three significant purposes – to ensure consistency of results in a case, avoid endless litigation by settling the issues, and preserve the structure of superior and inferior courts as designed by the Ohio Constitution. *FIA Card Servs., N.A. v. Wood*, 7th Dist. Jefferson No. 08-JE-13, 2009-Ohio-1513, ¶ 20, citing *Nolan, supra,* at 3-4, 462 N.E.2d 410,

**{¶23}**  Appellants argue that our decision authorized them to "access *and* maintain" the Beatty property, not "access *to* maintain" it, and, therefore, the trial court misinterpreted the phrase.  Appellants further argue that the trial court ignored the lion's share of our opinion, in which the phrase "lake access/privilege" clearly referred solely to the rights to fish and boat in Lake Copeland.  Appellants assert that the lake privileges that they relinquished in 2002 were swimming, boating, fishing, picnicking in Lake Copeland Park, and locating and using a boat or canoe without a motor.  Therefore, they conclude that the lake access/privileges we ordered to be stricken were boating and fishing.

**{¶24}** Appellees counter that the trial court did not exceed the scope of its authority when it modified the previous order. They contend that Appellants simply disagree with the outcome.

**{¶25}** We recognized three areas of disagreement between the parties in the first appeal, the third disagreement related to the lake access/privileges. It was clear from our decision that the matter was remanded to remove Appellants' license to access the lake. We plainly stated, "the granting of the lake access/privileges, which were relinquished by [the Urbanias] in 2002 for the sum of $18,000.00 was an abuse of the trial court's discretion." A cursory review of the record reveals that the right to fish, boat, and the right to locate and use a non-motorized boat, rowboat, or canoe on the lake were the lake access/privileges relinquished by Appellants in 2002.

**{¶26}** Further, without lake privileges, Appellants' access to the Lee Guterba limited access area is unnecessary. The schematic attached to the 2017 Judgment Entry contains arrows pointing to the area with the instruction that "Urbania may use this area for lake access, fishing, etc…" Appellants' use of the area was for the sole purpose of facilitating their lake access/privileges. Appellants were vested with maintenance rights. One of the two stated objectives of the settlement was to physically divide the parties. The trial court sought to avoid joint access to any part of the Beatty property except where absolutely necessary. Because the trial court abused its discretion in reinstating Appellants' lake access/privileges, it is reasonable to conclude that they do not require access to the Lee Guterba limited access area. Because we remanded this matter for the trial court to strike out the lake access/privileges from the 2017 Judgment Entry, Appellants' access to the Lee Guterba limited access area must be stricken as well.

**{¶27}** Accordingly, we find that the 2019 Judgment Entry must be vacated and the 2017 Judgment Entry reinstated with the following modifications:

Page 3, second final paragraph, line four: delete "to the lake shore";

Section A.1.: replace "the shores of Lake Copeland as the water level may fluctuate from time to time" (line seven) and "the water of Lake Copeland" (lines nine and ten) with "the eastern boundary of the Lee Guterba limited access area";

Case No. 19 CO 0036

Section A.2. delete "to the edge of the said lake Copeland: to walk to the lakeshore, enjoy the property adjacent to the lake, fish on the lake, and launch a canoe or other small non-motorized watercraft for recreational use" (lines three through five) and "Lake Copeland and" (line seven);

Section A.2.a.: replace "the border of Copeland Lake" (line two) and "the shores of Copeland Lake" (line four) with "the eastern boundary of the Lee Guterba limited access area";

Section A.2.c., line two: replace "the shores of Copeland Lake" with "the eastern boundary of the Lee Guterba limited access area";

Page 6, first paragraph: replace "the lake" (line two) and "the lake front" (lines eight and eleven) with "the eastern boundary of the Lee Guterba limited access area";

Section A.2.f., lines six and seven: delete "or the lake for recreation, maintenance, fishing or boating";

Section A.2.g.: delete entire paragraph;

Section A.2.i, line one: replace "the shores of Lake Copeland" with "the eastern boundary of the Lee Guterba limited access area";

Schematic attached to the 2019 Judgment Entry: delete "Urbania may use this area for lake access, fishing, etc."

## CONCLUSION

{¶28} For the foregoing reasons, we sustain Appellant's sole assignment of error and find that the trial court acted in contravention of the law-of-the-case doctrine when it modified the 2017 Judgment Entry. Accordingly, the 2019 Judgment Entry is vacated, and the 2017Judgment Entry is reinstated as modified herein.

Case No. 19 CO 0036

Donofrio, J., concurs.

Robb, J., concurs.

[Cite as *Beatty v. Urbania*, 2020-Ohio-3361.]

_____

For the reasons stated in the Opinion rendered herein, it is the order of this Court that the 2019 Judgment Entry is vacated, and the 2017Judgment Entry is reinstated as modified herein. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**